*In re* MARRIAGE OF EVELYN C. MARTHENS, Petitioner-Appellant, and WILLIAM R. MARTHENS, Respondent-Appellee.

Third District   No. 3—90—0626

Opinion filed July 5, 1991.

William G. Schick, of Rock Island, for appellant.

Michael J. Weng, of Lousberg, Kopp & Bonnett, P.C., of Rock Island (Peter H. Lousberg, of counsel), for appellee.

JUSTICE HAASE delivered the opinion of the court:

The petitioner, Evelyn C. Marthens, appeals from the trial court's judgment dissolving her marriage to the respondent, William R. Marthens. Specifically, Evelyn contends that the trial court abused its discretion with respect to the amount and duration of maintenance, the division of the marital property, and the refusal to award attorney fees.

The record shows that the parties were married on September 14, 1968. On September 18, 1987, the trial court entered an order finding grounds for the dissolution of the marriage. On January 12, 1989, the court awarded custody of the parties' four minor children to Evelyn. On December 28, 1989, the court entered an order dissolving the parties' marriage and resolving issues regarding the division of marital property, maintenance, child support, and attorney fees.

Evelyn testified that at the time of trial she was 47 years old. She had almost 40 hours of college credit, but did not plan to obtain a college degree. For most of the 21-year marriage, she had been a homemaker, although she did secretarial work for William's company from

1980 to 1985. In 1985, she started an international trade show business, which she operated in her home. The business required her to travel in the United States and to Europe. In 1987, the business showed a profit of $6,097. Evelyn estimated that her 1988 income would be about the same.

Evelyn further testified that she often received money from her parents. She claimed that money she received before 1985 from her parents was a gift, but thereafter her parents loaned her $73,500. There was no written agreement that Evelyn repay the money, and she used it for household expenses, vacations, and private schooling for the children. Regarding her health, Evelyn stated that she suffered from bronchiectasis, which required surgery to remove the lower and middle lobes of her right lung. According to Evelyn, a doctor advised her to have one of her lungs removed. Consequently, she was concerned about obtaining health insurance.

William testified that he was 49 years old at the time of trial. He began working for his father's business, the Marthens Company, in 1964. Over the years, his father gave him shares of stock in the company. By 1969, William owned a majority of the stock in the company. In 1973, he became president of the company. Between 1973 and 1987, the stock book value of the company increased from $20.52 to $103.26 per share. William's annual net income was $98,931.

Based on the foregoing evidence, the trial court dissolved the parties' marriage and entered an order providing, *inter alia*, that: (1) William pay Evelyn $3,300 per month in child support; (2) William pay Evelyn $700 per month in maintenance for 12 months, beginning January 1, 1990 (the court retained jurisdiction to review the further extension of maintenance); (3) William provide health insurance for the children and pay all their uninsured medical expenses; (4) William maintain health insurance for Evelyn for three years on the group policy of the Marthens Company; and (5) William be appointed trustee of $52,000 in certain accounts to administer it for the children's education.

The court further ordered that the *marital* property, which had a total value of $744,594.98, be divided as follows:

| | William | Value |
|---|---|---|
| (1) | Time-share interest in Colorado condominium | $15,000.00 |
| (2) | Timber Knoll Apartment Complex | -119,963.05 (liability) |
| (3) | Half of Executive Life Insurance Policy | 30,832.50 |

| | | |
|---|---|---:|
| (4) | Northwestern Mutual Life Insurance Policy | 3,849.00 |
| (5) | General American Life Insurance Policy | 2,015.00 |
| (6) | Merrill Lynch IRA | 7,421.78 |
| (7) | 60% of the Merrill Lynch IRA Combined Pension Accounts | 205,327.56 |
| (8) | Reimbursement to Marital Estate from First Midwest Bank IRA | 194,839.54 |
| (9) | Private school tuition refund | 6,000.00 |
| (10) | Half of all household goods, furnishings, clothing, jewelry | 16,703.00 |
| (11) | Economy Fire and Casualty check | 1,029.00 |
| (12) | Silver coin collection | 11,900.00 |
| (13) | Merrill Lynch Cash Management Account | 13,615.00 |
| (14) | Bank accounts | 106.00 |
| (15) | Country club membership | 1,730.00 |
| | TOTAL | $390,405.33 |

(52.4% of total marital assets)

| | Evelyn | Value |
|---|---|---:|
| (1) | Marital home equity | $80,000.00 |
| (2) | Half of Executive Life Insurance Policy | 30,832.50 |
| (3) | Northwestern Mutual Life Insurance Policy | 6,409.00 |
| (4) | General American Life Insurance Policy | 2,015.00 |
| (5) | IRA account | 9,250.00 |
| (6) | 40% of Merrill Lynch IRA Combined Pension Accounts | 136,885.04 |
| (7) | Two automobiles | 9,078.00 |
| (8) | Additional tax refund for filing amended joint tax return | 11,950.00 |
| (9) | Half of all household goods, furnishings, clothing, jewelry | 16,703.00 |
| (10) | West German bank account | 9,934.92 |
| (11) | First Midwest Bank checking account | 2,006.97 |
| (12) | Northwestern Bank checking account | 10,745.00 |
| (13) | E.F. Hutton account | 7,084.00 |
| (14) | Merrill Lynch account | 21,197.00 |
| | TOTAL | $354,189.65 |

(47.6% of total marital assets)

The court further awarded the parties their *nonmarital* property as follows:

| | William | Value |
|---|---|---|
| (1) | 6,200 shares of Marthens Company stock | $669,600.00 |
| (2) | First Midwest Bank IRA | 104,913.60 |
| (3) | Aetna Insurance Policy | 483.00 |
| (4) | Sun Life Insurance Policy | 1,500.00 |
| (5) | Other items of personal property | 24,277.50 |
| | TOTAL | $800,774.10 |

| | Evelyn | Value |
|---|---|---|
| (1) | 600 shares of Marthens Company stock | 64,800.00 |
| (2) | Swiss bank account | 21,736.00 |
| (3) | Personal property (furniture) | 39,200.00 |
| (4) | Wedding and engagement rings | 1,500.00 |
| | TOTAL | $127,236.00 |

Evelyn's first argument on appeal is that the trial court abused its discretion regarding the amount and duration of the maintenance award.

■ Section 504(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1989, ch. 40, par. 504(b)) provides that a court is to award maintenance in such amounts and for such periods of time as it deems just, after consideration of the following additional factors: the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment; the standard of living established during the marriage; the duration of the marriage; the age and the physical and emotional condition of both parties; and the ability of the spouse from whom maintenance is sought to meet his or her needs while meeting those of the spouse seeking maintenance. A trial court's decision regarding the amount of a maintenance award will not be overturned unless no reasonable person would take the view adopted by the trial court. *In re Marriage of Heller* (1987), 153 Ill. App. 3d 224, 505 N.E.2d 1294.

■ ■ A spouse applying for maintenance has an affirmative duty to seek gainful employment. (*In re Marriage of Heller* (1987), 153 Ill. App. 3d 224, 505 N.E.2d 1294.) This goal, however, must be balanced against a realistic appraisal of the likelihood that the spouse will be able to support herself in some reasonable approximation of the standard of living established during the marriage. (*In re Marriage of Carney* (1984), 122 Ill. App. 3d 705, 462 N.E.2d 596.) Maintenance for a limited period is appropriate where the spouse is employable at an income not overly disproportionate to the standard of living established during the marriage. Conversely, where the spouse is not em-

ployable or is employable only at a lower income, as compared to her previous standard of living, then permanent maintenance would be appropriate. (*In re Marriage of Heller* (1987), 153 Ill. App. 3d 224, 505 N.E.2d 1294.) Limited maintenance awards have been upheld in cases in which the award was intended to maintain a party for a period during which such party's income-producing potential might be fully realized. (*In re Marriage of Hart* (1989), 181 Ill. App. 3d 1066, 537 N.E.2d 829.) The decision to grant limited maintenance will not be disturbed on review unless it amounts to an abuse of discretion or it is against the manifest weight of the evidence. *In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338, 461 N.E.2d 447.

■■ We find no abuse of discretion regarding the amount of the maintenance award. However, we find that even though the trial court properly retained jurisdiction to review the case, it nevertheless abused its discretion in making the award reviewable after only one year. The court's maintenance award stated that "[William] shall pay as rehabilitative maintenance the sum of $700 per month on the 1st day of each month for 12 months, starting January 1, 1990. Jurisdiction is retained to review the issue of further extension of rehabilitative maintenance." Under this order, Evelyn's maintenance payments ceased on January 1, 1991.

This left Evelyn with three minor children, no college education, no special skills, and a yearly net income from her import business of only $6,000. We also note that even though Evelyn had an obligation to become self-sufficient, her ability to earn significant income in the near future was very speculative. On the other hand, William had substantial earning power and assets. Given the disparity between the parties' relative earning powers and assets, we find that a better approach would have been to make the award reviewable at the end of five years.

Accordingly, we find that William's maintenance obligation of $700 per month should be extended from January 1, 1991, through January 1, 1995. The trial court will retain jurisdiction so that it can review the maintenance award on or about January 1, 1995, to determine whether William's maintenance obligation should continue. At that point, the court can reassess Evelyn's ability to become financially independent in the future. We note that since the court has retained jurisdiction and is to determine whether maintenance should continue, no motion to modify the award is required by either party at that time and either party may make any argument appropriate on the issue of raising, lowering, continuing and/or terminating the maintenance award.

Because it is apparent from the record that Evelyn's maintenance payments ceased on January 1, 1991, we order William to pay Evelyn a lump sum for the maintenance that accrued after January 1, 1991, through the time that this decision becomes final. That payment should be made within 30 days after this decision becomes final.

Additionally, we note that the trial court's order provided that William provide health insurance for Evelyn for only three years on the group policy of the Marthens company. Due to Evelyn's poor medical history, she may have some difficulty procuring health insurance. If she is unable to do so, the trial court should take the matter into consideration in any future review. We also find that Evelyn should have the option to petition the trial court for a review of her circumstances earlier than the five-year review date if it is necessary because of her inability to obtain reasonably priced health insurance.

■ Next, Evelyn argues that the court erred in its distribution of the marital property. In that regard, she initially argues that she was entitled to a portion of William's 6,200 shares of Marthens Company stock, which was nonmarital property, because the company indirectly benefited from her homemaking services.

We find Evelyn's argument meritless. The 6,200 shares of Marthens Company stock were clearly William's nonmarital property. Section 503(c)(2) of the Act provides that if a spouse makes a contribution to nonmarital property through her personal effort, she shall be reimbursed from the estate receiving the contribution notwithstanding any transmutation, provided that the effort is significant and results in substantial appreciation of the nonmarital property. (Ill. Rev. Stat. 1987, ch. 40, par. 503(c)(2).) We find that the "personal effort" contemplated by the statute must relate to the nonmarital property. Evelyn failed to cite any Illinois cases holding that a spouse's homemaking services can be deemed a contribution to the other spouse's nonmarital business venture. Here, Evelyn's claim of homemaking services were unrelated to the nonmarital property. Her actual contributions to the business were minimal, and she received adequate wages for her secretarial work. Moreover, the trial court correctly noted that Evelyn was substantially reimbursed throughout the marriage by William's yearly salary, which was reasonable compensation for his efforts. In such a case, the salary received during marriage is marital property, and therefore, the estate has already been compensated. See *In re Marriage of Morse* (1986), 143 Ill. App. 3d 849, 493 N.E.2d 1088.

Evelyn further argues that the property division was inequitable and should be modified.

■ It is well settled that fair and equitable division of marital property under the Act does not require that the marital estate be split in equal proportions. (*In re Marriage of McMahon* (1980), 82 Ill. App. 3d 1126, 403 N.E.2d 730.) Rather, the Act requires only that the trial court divide the marital property in just proportions. (*In re Marriage of Carney* (1984), 122 Ill. App. 3d 705, 462 N.E.2d 596.) The court is to consider all relevant factors which, in this case, include: the duration of the marriage; the value of the property set apart to each spouse; the relevant economic circumstances of each spouse; the amounts and sources of each spouse's income; the age, occupation, vocational skills, employability, and needs of each party; whether the apportionment is in lieu of or in addition to maintenance; and the reasonable opportunity for each spouse for future acquisition of assets and income. (Ill. Rev. Stat. 1985, ch. 40, par. 503(d).) A reviewing court will not disturb the trial court's apportionment of property absent a showing of an abuse of discretion. (*In re Marriage of Wentink* (1984), 132 Ill. App. 3d 71, 476 N.E.2d 1109.) The standard used in determining whether the trial court abused its discretion is whether no reasonable person would take the view adopted by the court. *In re Marriage of Brooks* (1985), 138 Ill. App. 3d 252, 486 N.E.2d 267.

■ Applying the above principles to the instant case, we find that a reasonable person could have adopted the view taken by the trial court. Although William had significant assets and a large annual income, Evelyn was not left without sizeable assets of her own. More importantly, the trial court ordered William to pay $700 per month in maintenance which we have extended for five years before it is reviewable. Additionally, the trial court also ordered William to pay 40% of his annual net income in child support. Under the circumstances, we find no abuse of discretion in the court's distribution of the marital property.

■ Evelyn next argues that the trial court's order relating to the children's educational expenses should be modified to provide: (1) private out-of-State high school tuition expenses for the children; (2) that Evelyn be named as trustee of the funds established for the children's college education; and (3) that William pay all college education expenses not covered by the trusts.

We disagree. The trial court's decision regarding the above issues was well within its sound discretion, and we find no abuse of that discretion. The trial court correctly found that the parties did not have significant income to continue the private education. It appears that the couple was able to afford the private schooling in part because of money loaned or given to Evelyn by her parents. The trial court also

prudently named William the trustee of the educational funds. The record showed that he was responsible for establishing the funds and showed more concern about the parties' financial ability to provide for the children's education. Regarding the college education expenses not covered by the trust fund, the court ruled that if the parties cannot agree, the court will resolve the issue when and if it arises. The trial court's approach was reasonable, since any additional expenses were speculative, and the issue could be decided at a later date. Under the circumstances, we find that the trial court's decision was proper.

Lastly, Evelyn argues that the trial court erred in refusing to award her attorney fees and costs.

■ A trial court's decision of whether to award attorney fees will not be disturbed on review absent an abuse of discretion. (*In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 483 N.E.2d 1229.) A party seeking an award of attorney fees must show a financial inability to pay and a corresponding ability of the other spouse to do so. Financial inability to pay, however, does not require a showing of destitution. (*In re Marriage of Felson* (1988), 171 Ill. App. 3d 923, 525 N.E.2d 1103.) Nor is it necessary for a spouse seeking such fees to divest herself of capital assets or deplete her means of support and thereby undermine her economic stability. *In re Marriage of Felson* (1988), 171 Ill. App. 3d 923, 525 N.E.2d 1103; *In re Marriage of Erickson* (1985), 136 Ill. App. 3d 907, 483 N.E.2d 692.

Here, the record shows that William's income, assets, and potential earning power are far greater than Evelyn's. While Evelyn had an obligation to contribute toward her attorney fees, she should not be divested of her assets thereby undermining her economic stability to do so. Accordingly, we find that Evelyn should be awarded $18,712 in attorney fees from William, which is one-half of the $37,424 that she stipulated at trial was necessary to present her case. Evelyn will be making a contribution to her attorney fees which we believe is appropriate to her situation.

The judgment of the circuit court of Rock Island County is reversed as to the duration of the time-limited maintenance award and the refusal to award attorney fees. The remainder of the trial court's judgment is affirmed.

Affirmed in part; reversed in part.

SLATER and STOUDER, JJ., concur.