595 N.E.2d 1349 (1992)
231 Ill. App.3d 481
172 Ill.Dec. 679
In re MARRIAGE OF Georgianne MILLER, Petitioner-Appellant, and
Joseph A. Miller IV, Respondent-Appellee.
No. 3-91-0282.
Appellate Court of Illinois, Third District.
July 7, 1992.
*1351 Valerie Moehle Umholtz, Moehle, Swearingen & Associates, Ltd., Pekin, for Georgianne Miller.
Stephen W. Bush, Bush & Bush, Washington, for Joseph A. Miller IV.
*1350 Justice SLATER delivered the opinion of the court:
Petitioner Georgianne Miller and respondent Joseph A. Miller IV were married on December 7, 1987. One child was born during the marriage. A petition for dissolution of marriage was filed on August 2, 1989, and a judgment of dissolution was entered on February 22, 1991, which was modified on April 8, 1991. On appeal, petitioner raises the following issues: (1) whether the amount of child support awarded was against the manifest weight of the evidence; (2) whether the trial court abused its discretion in failing to award maintenance to petitioner; (3) whether the computation of marital contributions to non-marital property was against the manifest weight of the evidence; (4) whether a purported loan made by respondent should have been classified as a marital asset; (5) whether the trial court erred in awarding petitioner only 50% of the marital assets; and (6) whether the trial court erred in refusing to award petitioner a claimed arrearage in temporary child support. We affirm in part, reverse in part and remand.
Petitioner first contends that the child support award of $120 per week was against the manifest weight of the evidence. The trial court based the award on its finding that respondent's net weekly income was $600. Petitioner claims that respondent's income was much greater than that found by the court. She notes that the parties' lifestyle during the marriage included a nice home, clothes and cars, expensive jewelry, several vacations and membership in a country club. Petitioner also relies on her testimony that in 1984, while she was acting as a bookkeeper for the restaurant owned by respondent, he received unreported cash payments of $300 to $500 per week. In addition, petitioner notes that respondent's business paid for groceries, car expenses, country club and golf fees and provided meals at half price.
*1352 Respondent does not deny that large sums of money were spent during the marriage, but he notes that he received approximately $44,000 in non-recurring income during the marriage, primarily from the sale of a business and six parcels of real estate. Respondent contends that he has no other pending investments and that his present income is derived solely from his salary and interest he receives from certificates of deposit. Respondent also argues that petitioner's testimony regarding alleged unreported cash payments in 1984, three year's prior to the parties' marriage, did not establish that he currently receives such payments. Respondent notes petitioner's testimony that after the marriage the only time that she was aware that cash was taken out was to pay employees.
Section 505 of the Illinois Marriage and Dissolution of Marriage Act (the Act) defines "net income" as the total of all income from all sources, minus various deductions such as federal and state income tax, social security payments and health insurance premiums (Ill.Rev.Stat. 1989, ch. 40, par. 505(a)(3)). The record in this case reflects that respondent receives $513 per week in wages and interest payments. The trial court initially found that respondent's net weekly income was $500. This finding was increased to $600, however, after petitioner filed her motion for reconsideration in which she pointed out that respondent's business paid for his car expenses ($93.50), country club dues and golf expenses ($87) and groceries ($105). Thus it is apparent that the trial court found that some of these items represented income to respondent, although which items and to what extent is unclear. The court may have found that some of these items represented reasonable business expenses rather than income. (See In re Marriage of DeGironemo (1990), 206 Ill.App.3d 1019, 151 Ill.Dec. 918, 565 N.E.2d 189.) Findings regarding net income are within the trial court's discretion (In re Marriage of Harmon (1991), 210 Ill.App.3d 92, 154 Ill.Dec. 727, 568 N.E.2d 948) and we find no abuse of that discretion here.
Similarly, we find no error by the trial court in failing to consider the alleged unreported cash income received by respondent. Petitioner's testimony regarding these sums largely concerned events prior to the parties' marriage and respondent denied receiving any such payments for several years. The trial court was in the best position to judge the credibility of the witnesses and its determination was not against the manifest weight of the evidence. In addition, while the parties' expenditures during the marriage suggest an income greater than that found by the court, respondent's testimony regarding receipt of over $40,000 in non-recurring income between 1988 and 1990 was largely undisputed. While non-recurring income may properly be included in calculating net income for purposes of child support (In re Marriage of Hart (1990), 194 Ill.App.3d 839, 141 Ill.Dec. 550, 551 N.E.2d 737), this is not an inflexible rule and the trial court has the discretion to exclude such income. To hold otherwise could lead to absurd results, as where a party's income is artificially inflated by a large capital gain on the sale of a residence. We believe that such determinations are best left to the sound discretion of the trial court.
Petitioner next contends that the trial court erred in failing to award maintenance. At the time the parties were married petitioner was a licensed beautician earning approximately $300 per week. She also worked as a bartender and waitress at respondent's business. She continued working until a few months before the parties' child, Joey, was born. After Joey was born petitioner worked occasionally at respondent's business and also worked as a beautician at home and at a salon in Peoria. Petitioner testified that the respondent "sabotaged" her in-home beautician business by being rude to her customers. Petitioner later attended college part-time seeking to obtain a teaching certificate. She testified that she would like to continue her education, but that it would be difficult to work and attend school and also take care of Joey and Nathan, her son by a previous marriage. At the time of the hearing petitioner was 30 years old and unemployed. *1353 She received approximately $13,000 in liquid assets as her share of the marital estate. The trial court found that petitioner was healthy and employable and had background and training making her suitable for a number of different occupations. The court further found that she had sufficient property and income to provide for her reasonable needs. The court ordered, based upon the short duration of the marriage and after considering the factors contained in section 504 of the Act, that respondent maintain petitioner's insurance coverage for two years as temporary maintenance, terminating upon petitioner obtaining employment. No other maintenance was awarded by the court.
Section 504 of the Act provides in part:
"Maintenance. (a) In a proceeding for dissolution of marriage * * * the court may grant a maintenance order for either spouse, only if it finds that the spouse seeking maintenance:
(1) lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, and
(2) is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home, or
(3) is otherwise without sufficient income.
(b) The maintenance order shall be in such amounts and for such periods of time as the court deems just, made without regard to marital misconduct and may be in gross or for fixed or indefinite periods of time and the maintenance may be made from the income or property of the other spouse after consideration of all relevant factors, including:
(1) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
(2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
(3) the standard of living established during the marriage;
(4) the duration of the marriage;
(5) the age and the physical and emotional condition of both parties;
(6) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance; and
(7) the tax consequences of the property division upon the respective economic circumstances of the parties." Ill.Rev. Stat.1989, ch. 40, par. 504.
The propriety, amount and duration of a maintenance award lie within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. (In re Marriage of Cheger (1991), 213 Ill.App.3d 371, 157 Ill.Dec. 116, 571 N.E.2d 1135.) An abuse of discretion occurs only where no reasonable person would take the view adopted by the trial court. (Cheger, 213 Ill.App.3d 371, 157 Ill. Dec. 116, 571 N.E.2d 1135.) In this case, while the trial court's order states that it considered all the factors contained in section 504, it appears that the court was heavily influenced by two factors: petitioner's potential ability to support herself and the short duration of the marriage. While section 504 requires a court to consider all relevant factors, there is no requirement that the factors be given equal weight, so long as the balance struck by the court is reasonable under the circumstances. While this court might have decided differently had the task been ours, we are unable to say that no reasonable person could have taken the view adopted by the trial court. We find no abuse of discretion.
Petitioner next maintains that the marital estate made contributions to several non-marital properties which should have been credited to the marital estate. Those properties are: respondent's business, known as Miller's Cliftwood of Morton (Cliftwood); a property known as the *1354 "Hank's lot"; and the marital residence. Section 503(c)(2) of the Act provides:
"When one estate of property makes a contribution to another estate of property, or when a spouse contributes personal effort to non-marital property, the contributing estate shall be reimbursed from the estate receiving the contribution notwithstanding any transmutation; provided, that no such reimbursement shall be made with respect to a contribution which is not retraceable by clear and convincing evidence, or was a gift, or, in the case of a contribution of personal effort of a spouse to non-marital property, unless the effort is significant and results in substantial appreciation of the non-marital property. Personal effort of a spouse shall be deemed a contribution by the marital estate. The court may provide for reimbursement out of the marital property to be divided or by imposing a lien against the non-marital property which received the contribution." Ill.Rev.Stat.1989, ch. 40, par. 503(c)(2).
Petitioner contends that both she and respondent contributed significant personal effort to Cliftwood in their respective capacities as waitress/bartender and owner/manager. Petitioner relies on testimony regarding improvements to Cliftwood to establish that these efforts resulted in substantial appreciation. These improvements included a coatroom, new booths, barstools and lighting, a computer and catering equipment. The cost of these items was disputed, with respondent indicating a cost of approximately $9,000 while petitioner's figures totalled over $20,000.
We agree with the trial court's finding that there was insufficient evidence presented to prove any increase in value in Cliftwood. No accountants, real estate appraisers or other experts testified regarding the value of the business before or after the marriage. "The party claiming reimbursement must prove that the property has substantially appreciated through the significant personal efforts of the spouse." (In re Marriage of Eddy (1991), 210 Ill.App.3d 450, 458, 155 Ill.Dec. 174, 180, 569 N.E.2d 174, 180.) Capital expenditures by a business do not necessarily result in an increase of the value of that business. Furthermore, there was no evidence that these improvements were the result of the parties' personal efforts, rather than some factor external to the marriage. (See Eddy, 210 Ill.App.3d at 458, 155 Ill.Dec. at 180, 569 N.E.2d at 180 (an increase in value resulting from factors external to the marriage is not synonymous with appreciation arising from the personal effort contemplated by the statute).) We find no error.
Petitioner also contends that mortgage payments made by respondent on Hank's lot were made with marital funds. Respondent and Jack Rosenak purchased the lot in September of 1987 for $26,500. The two men were to split the $600 monthly mortgage payment and a payment book contained in the record indicates that this arrangement was followed for the most part. Respondent and Rosenak testified, however, that Rosenak loaned respondent approximately $4,000 to make his share of the payments. Rosenak testified that there was nothing in writing regarding the loan because he and respondent were old friends and business associates. Petitioner contends that the testimony in this regard was completely unbelievable.
The trial court is in a position superior to a court of review to observe the witnesses while testifying, to assess their credibility and to weigh the evidence and its findings will not be disturbed unless they are against the manifest weight of the evidence. (In re Marriage of Taylor (1989), 191 Ill.App.3d 648, 138 Ill.Dec. 876, 548 N.E.2d 106.) Section 503(c)(2) prohibits reimbursement for contributions which are not retraceable by clear and convincing evidence. The trial court found that no clear and convincing evidence was presented that marital funds were used. Given the nature and quality of the evidence, we are unable to hold that such a finding was against the manifest Weight of the evidence.
Petitioner further maintains that the court erred in finding that $3,650 of the funds used to pay off the balance of the *1355 mortgage on the marital residence were non-marital funds. The marital residence is respondent's non-marital property. Respondent made all mortgage payments on the marital residence from his checking account, which contained marital funds. On March 3, 1988, respondent deposited his paycheck and a payment of $10,797.50 he had received from the sale of non-marital property into the checking account. Prior to that time the balance in the account was $318.86. A few days later respondent paid the $3,650 mortgage balance. The court found that the reduction in the mortgage during the marriage of over $11,000 was a marital asset, but subtracted the final payment made by respondent from that amount. Petitioner argues that when the non-marital funds were commingled in the checking account with marital funds they lost their identity and should have been considered marital funds. (Ill.Rev.Stat. 1989, ch. 40, par. 503(c)(1).) We find, however, that the evidence presented was clear and convincing that the source of the $3,650 was the sale of a non-marital asset, and therefore respondent was entitled to reimbursement from the marital estate under section 503(c)(2). Petitioner also requests reimbursement for $2,000 in improvements made to the marital residence. However, no evidence was presented regarding the source of the $2,000 and therefore no reimbursement can be allowed.
Petitioner next contends that the court erred in failing to classify a loan made by respondent to the Scrub Tub Pub, Inc., (STP) as a marital asset. Respondent held a 1/3 interest in STP, which is a nonmarital asset. A balance sheet listing STP's assets and liabilities showed a note payable to respondent in the amount of $6,200. Respondent admitted loaning the money to STP but he stated that Rosenak paid almost all of it for him and he owed the money to Rosenak. Respondent later admitted making payments of $800 and $350. Rosenak testified that respondent owed him approximately $2,000 for payments made to STP. Petitioner identified three withdrawals made from the parties' joint savings account as funds given to STP. These withdrawals totaled $1800. The trial court found that contribution by the marital estate to STP had not been proved by clear and convincing evidence. We hold that such a finding was against the manifest weight of the evidence with respect to the two payments admitted by respondent and the unrebutted testimony of petitioner concerning the withdrawals from the joint savings account. Since it is apparent from the record that the trial court's intention was to divide the marital property equally, we need not remand to the trial court for re-examination of the property distribution. (See In re Marriage of Orlando (1991), 218 Ill.App.3d 312, 160 Ill.Dec. 763, 577 N.E.2d 1334.) We direct that the loans by respondent to STP in the amount of $2,950 be classified as a marital asset and that this amount be distributed equally between the respondent and petitioner.
Petitioner next contends that she should have received a greater share of the marital assets than the approximate 50% distribution awarded by the court. Each party received marital assets valued at approximately $19,000. In addition respondent was awarded his non-marital assets, which were substantial, and he was ordered to pay $3,500 of petitioner's attorney fees and over $8,000 in credit card debts. The parties stipulated that petitioner would receive a 1985 Lincoln automobile and the corresponding loan debt and $2,000 in credit card debts. The stipulation also provided that two parcels of marital real estate with net equity of approximately $6,000 would be sold and the proceeds divided evenly.
Section 503 of the Act provides that marital property is to be divided in "just proportions" considering all relevant factors. (Ill.Rev.Stat. 1989, ch. 40, par. 503(d).) These factors include: the contribution or dissipation of each party with respect to the property; the value of the property set apart to each spouse; the duration of the marriage; the economic circumstances of each spouse; the age, health, employability, amount and sources of income and needs of each party; the custodial provisions for any children; *1356 whether the apportionment is in lieu of or in addition to maintenance; and the opportunity of each spouse for future acquisition of capital assets and income. (Ill.Rev.Stat. 1989, ch. 40, par. 503(d).) The division and distribution of marital property is within the sound discretion of the trial court and will not be disturbed on review unless no reasonable person would take the view adopted by the court. (In re Marriage of Marthens (1991), 215 Ill.App.3d 590, 159 Ill.Dec. 3, 575 N.E.2d 3; In re Marriage of Harding (1989), 189 Ill.App.3d 663, 136 Ill. Dec. 935, 545 N.E.2d 459.) While some of the factors listed above, such as petitioner's custody of Joey and the relative economic circumstances of the parties weigh in favor of a larger property distribution to petitioner, other factors such as the length of the marriage and the contributions of each party in acquiring the property support the trial court's decision. We find no abuse of discretion.
Finally, petitioner maintains that the trial court erred in finding that respondent was not in arrears in his temporary child support payments. Petitioner testified that respondent had failed to make the $75 per week support payments for a nine week period. On cross-examination petitioner agreed that respondent had paid $150 per week on nine occasions, but she considered the additional money to be a gift. She denied that these payments were an advance on the child support, explaining that respondent said he would give her $150 per week as long as she "took care of the babysitter out of the $150 and any outstanding things [she] needed to buy."
Whether the additional $75 payments are characterized as a gift or an "advance" on future support payments, respondent remained obligated to pay $75 per week. Spouses may not modify a courtordered child support obligation by creating a new agreement between themselves without judicial approval. (Blisset v. Blisset (1988), 123 Ill.2d 161, 121 Ill.Dec. 931, 526 N.E.2d 125.) The additional amounts paid by respondent constituted voluntary overpayments.
As a general rule, no credit is given for voluntary overpayments of child support, even if made under the belief that they are legally required. (In re Marriage of Tollison (1991), 208 Ill.App.3d 17, 153 Ill.Dec. 2, 566 N.E.2d 852; Harner v. Harner (1982), 105 Ill.App.3d 430, 61 Ill.Dec. 312, 434 N.E.2d 465.) While exceptions may be made where the equities of the circumstances so demand (see, e.g., Tollison, 208 Ill.App.3d 17, 153 Ill.Dec. 2, 566 N.E.2d 852), we find no need to depart from the rule in this case. We direct the trial court to enter an order requiring respondent to pay $675 to petitioner in unpaid temporary child support.
For the reasons stated above, the judgment of the circuit court is affirmed in part, reversed in part and remanded with directions.
Affirmed in part; reversed in part and remanded, with directions.
GORMAN and McCUSKEY, JJ., concur.