2019 IL App (2d) 180038-U
No. 2-18-0038
Order filed December 3, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re MARRIAGE OF, TOBY DURCHSLAG, | ) ) | Appeal from the Circuit Court of Lake County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 10-D-2480 |
| | ) | |
| | ) | Honorable |
| SCOTT DURCHSLAG, | ) | Jay W. Ukena, |
| | ) | Charles W. Smith, |
| Respondent-Appellant. | ) | Judges, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Hutchinson and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Appellant did not show that trial court erred in its rulings on maintenance, property distribution, classification of the marital estate, or dissipation.  Trial court's award of attorney fees involved a mathematical error and was therefore reduced.

¶ 2    After the circuit court of Lake County entered a final judgment of dissolution of marriage, the respondent, Scott Durchslag, filed this appeal.  He challenges the trial court's rulings regarding maintenance, property distribution, classification of the marital estate, dissipation, and attorney fees.  We affirm as modified.

¶ 3                                I. BACKGROUND

¶ 4    The parties were married in 2004 and have two children.  In 2010, the petitioner, Toby Durchslag, petitioned for dissolution of the marriage.  A 26-day trial took place over 7 months in late 2013 and early 2014.  On July 14, 2015, the trial court (Judge Ukena) entered a judgment of dissolution.  The 2015 judgment of dissolution found the following facts:

¶ 5    Toby was 52 years old and had been out of the work force in excess of 10 years.  Toby's role in the marriage had been that of a primary caregiver to the parties' children and a homemaker for the marital home.  Toby went completely deaf during the marriage and hears only with the assistance of cochlear implants.  Toby's employment opportunities ranged from severely limited to non-existent due to her lack of recent employment, her responsibilities for the parties' children, and her overall health.  She would never be able to earn an income sufficient to support herself at the standard of living enjoyed by the parties during the marriage, and she might never be able to earn any income in the future beyond minimum wage.  Thus, despite the relatively short marriage, she was "a candidate for permanent maintenance."

¶ 6    Scott was 49 years old and in good health. His average annual income from 2006-2013 was $1,705,836.  During the marriage, he and Toby enjoyed a lavish and luxurious standard of living that included maintaining a $2 million home in Lake Bluff; residing elsewhere at times during the marriage; frequent travels to exotic and luxurious destinations in first-class accommodations at five-star resorts; dining at fine restaurants and enjoying expensive wines; and private school for the children. [The record reveals that in 2009, Scott and Toby's average monthly expenditures were $81,369; in 2010, they were $92,503.].

¶ 7    The trial court additionally found that, even though Scott was currently unemployed, he had the ability to earn income consistent with his historical earnings.  Further, based on his marital and non-marital assets, he was able to continue paying support of $9,000 per month.  The trial

court further stated that, upon Scott finding employment, a new maintenance and child support amount should be set. The future maintenance award would be based on Scott's annual salary of just over $1.7 million.

¶ 8    The trial court further found that Scott had dissipated assets of $125,541.71 from the breakdown of the marriage through June 4, 2014. The trial court further found that, if either party wanted to allege that additional dissipation had occurred since the close of proofs on June 4, 2014, and the date of judgment, then either party could file a petition on that issue. The trial court stated that such a cause of action would survive the entry of judgment.

¶ 9    The trial court awarded 67% of the marital estate to Toby and 33% of the marital estate to Scott. The trial court found that the parties had incurred $2 million in attorney fees and ordered that Scott be responsible for 67% of that amount. The trial court therefore ordered that Scott contribute $500,000 to Toby for the attorney fees that she had already paid.

¶ 10    Following the entry of the trial court's judgment, on September 8, 2015, Scott accepted a position as the CEO and president of Angie's List and moved to Indianapolis, Indiana. Scott's annual compensation at Angie's List, based on his bonuses, would be between $5.2 and $5.9 million. On March 2, 2016, Toby petitioned the trial court to set permanent maintenance and child support based on Scott's new employment.

¶ 11    On June 10, 2016, Toby filed a petition seeking interim and prospective attorney fees from Scott.

¶ 12    On November 10, 2016, Toby filed a petition for dissipation. She argued that at the close of proofs, the marital estate was valued between $1.85 and $2.35 million. However, by the time of the judgment, she argued that Scott had spent virtually all of the marital estate.

¶ 13    On December 20, 2017, the trial court (Judge Smith) entered a judgment order resolving the remaining issues left open in Judge Ukena's judgment. The trial court granted Toby permanent maintenance of $42,645.92 per month and made those payments retroactive to September 8, 2015, the date Scott began his employment with Angie's List. The trial court further ordered Scott to pay Toby $843 per month for child support. With respect to dissipation, the trial court charged Scott with dissipating $33,081.50 between the close of proofs and July 14, 2015. Scott filed a timely notice of appeal.

¶ 14                                          II. ANALYSIS

¶ 15    On appeal, Scott attacks five aspects of the trial court's judgment: maintenance, property distribution, classification of the marital estate, dissipation, and attorney fees. Before addressing the merits of those contentions, we first address two preliminary issues that Scott raises.

¶ 16                                    A. Preliminary Issues

¶ 17                                    1. Law of the Case

¶ 18    Scott's first contention on appeal is that Judge Smith erred in deferring to Judge Ukena's earlier rulings based on the law-of-the-case doctrine. Scott argues that the law-of-the-case doctrine was not applicable because there was no prior appeal in this case.

¶ 19    "[T]he law-of-the-case doctrine generally bars relitigation of an issue previously decided in the same case." *People ex rel. Madigan v. Illinois Commerce Comm'n*, 2012 IL App (2d) 100024, ¶ 31. Pursuant to the doctrine, questions decided on a previous appeal are binding on both the trial court on remand and the appellate court on subsequent appeals. *Norris v. National Union Fire Insurance Co. of Pittsburgh, PA.*, 368 Ill. App. 3d 576, 580 (2006). A prerequisite to the application of this doctrine is that there has been a prior appeal. See *id.* at 580. In this case, the law-of-the-case doctrine does not apply because Judge Ukena's order was not an appellate order.

¶ 20    In *In re Marriage of Carstens*, 2018 IL App (2d) 170183, this court addressed a similar issue. There the successor judge (also Judge Smith) determined that it was bound, pursuant to the law-of-the-case doctrine, by the prior judge's (also Judge Ukena's) award of "indefinite maintenance." *Id.* ¶ 15. We held that the trial court erred in finding that the law-of-the-case doctrine precluded it from modifying the duration of the maintenance award. *Id.* ¶ 25. We therefore remanded for the trial court to determine whether the evidence was sufficient to warrant a modification of the duration of the maintenance award. *Id.*

¶ 21    Here, although *Carstens* suggests that the appropriate remedy would be to remand the matter to the trial court for additional proceedings, Scott specifically requests that we do not do that. He asserts that, because this case has gone on for so long, "remand to the trial court, even with explicit instructions, would be a miscarriage of justice." Rather, he asks that this court find that Toby was only entitled to maintenance of $9,600 per month from July 14, 2015, "through the date of the order granting [his] appeal" and that her right to receive maintenance after that date be forever terminated. We find this suggested remedy of a summary reversal in his favor to be inequitable to Toby. Instead, we will treat Judge Smith's references to the law-of-the-case doctrine as meaning that he intended to give Judge Ukena's prior rulings deference, which would be appropriate. See *In re Marriage of Bernay*, 2017 IL App (2d) 160583, ¶ 14 (successor trial court judge should give deference to first trial court's factual determinations regarding the parties and their lifestyle).

¶ 22                                    2. Due Process

¶ 23    Scott next argues that his due process rights were violated because of the "profoundly excessive delays imposed on the resolution of this matter by the trial court," the trial court's repeated refusals to allow him to seek appellate review sooner, and Judge Smith's improper

application of the law-of-the-case doctrine. Because of these purported errors, Scott argues that we should reverse the trial court's orders and enter a judgment in his favor.

¶ 24    In order for court proceedings to meet the constitutional requirement of due process, the court must give litigants notice and an opportunity to be heard in an orderly proceeding which is appropriate for the case. *In re Marriage of Flosman*, 160 Ill. App. 3d 832, 837 (1987). Here, Scott's complaints do not rise to the level of due process violations. As to the length of the proceedings, Scott's argument is somewhat disingenuous, as the record reveals that he was responsible for some of the delays, such as taking 18 months to comply with Toby's discovery requests. Moreover, the lapse of time, considered in itself, does not amount to a deprivation of due process. *Id.* Further, the fact that the trial court did not let him appeal part of the judgment order while other issues remained pending was not improper. See *In re Marriage of Capitani*, 368 Ill. App. 3d 486, 490 (2006) (piecemeal appeals are discouraged). Additionally, as discussed earlier, Judge Smith's improper reliance on the law-of-the-case doctrine is not grounds to enter judgment in Scott's favor.

¶ 25                                B. Maintenance

¶ 26    Scott argues that the trial court erred in ordering him to pay unallocated and then permanent, maintenance in an exorbitant amount unsupported by any evidence. Maintenance is designed to be rehabilitative and to allow a dependent spouse to become financially independent. *In re Marriage of Haas*, 215 Ill. App. 3d 959, 964 (1991). "Permanent maintenance, on the other hand, is appropriate where it is evident that the recipient spouse is either unemployable or employable only at an income that is substantially lower than the previous standard of living." *In re Marriage of Murphy*, 359 Ill. App. 3d 289, 303 (2014). Section 504(a) of the Illinois Marriage and Dissolution of Marriage Act (the Dissolution Act) (750 ILCS 5/504(a) (West 2010)) provides

that a court is to award maintenance in an amount and of a duration as it deems just, after consideration of the following factors: the income and property of each party; the needs of each party; the present and future earning capacity of each party; any impairment of present and future earning capacity of the recipient spouse due to devoting time to domestic duties or forgoing opportunities because of the marriage; the time necessary to enable the party seeking maintenance to acquire appropriate education, training and employment; the standard of living established during the marriage; the duration of the marriage; the age and physical and emotional condition of both parties; the tax consequences of the property division; any contribution and services by the recipient spouse to the other spouse; any valid agreement of the parties; and any other factor that the trial court expressly finds to be just and equitable. 750 ILCS 5/504(a) (West 2014); *In re Marriage of Brankin*, 2012 IL App (2d) 110203, ¶ 9.

¶ 27    "[I]n awarding maintenance, courts have wide latitude in considering what factors should be used in determining reasonable needs, and the trial court is not limited to the factors listed in the governing statute." *In re Marriage of Mohr*, 260 Ill. App. 3d 98, 106 (1994). "No one factor is determinative of the issue concerning the propriety of the maintenance award once it has been determined that an award is appropriate." *Murphy*, 359 Ill. App. 3d at 304. "When determining the amount and duration of maintenance, the trial court must balance the ability of the spouse to support himself [or herself] in some approximation to the standard of living he [or she] enjoyed during the marriage." *In re Marriage of Shinn*, 313 Ill. App. 3d 317, 322 (2000). A trial court's determination as to an award of maintenance will not be disturbed on appeal absent an abuse of discretion. *In re Marriage of Dunlap*, 294 Ill. App. 3d 768, 772 (1998).

¶ 28    First, Scott is correct that the trial court erred in ordering unallocated maintenance. See 750 ILCS 5/504(b-4) (West 2014) (trial court "may not order unallocated maintenance and child

support in any dissolution judgment or in any post-dissolution order."). However, Scott cannot complain of this now as he specifically acquiesced to the trial court's finding that "the maintenance/child support to Toby" should be nontaxable. See *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004) ("[A] party cannot complain of error which that party induced the court to make or to which that party consented. The rationale behind this well-established rule is that it would be manifestly unfair to allow a party a second trial upon the basis of error which that party injected into the proceedings."). Moreover, even overlooking Scott's acquiescence, we find the trial court's error to be *de minimis* as Scott's obligation to pay unallocated support ultimately existed for less than two months. The July 14, 2015, judgment of dissolution required Scott to pay unallocated support until he found a new job—which he did on September 8, 2015.

¶ 29    Second, as to the duration of the maintenance, we do not believe that the trial court abused its discretion in determining that it should be permanent. The record reveals that Toby was earning $277,255 annually in the marketing field prior to her marriage to Scott. She left her employment following the marriage due to Scott's encouragement and to become a stay-at-home mother. She enjoyed a lavish lifestyle with Scott. In 2009, their average monthly expenditures were $81,369. In 2010, they were $92,503. Prior to the judgment of dissolution, Toby lost her hearing. She subsequently had double cochlear implant surgery. Her impaired hearing made it difficult to find a job. Further, being out of the workforce for over 10 years, she had to limit her searches to marketing jobs that did not involve social media because she had missed the social media digital marketing revolution during her absence from the workforce. These facts establish that Toby would have difficulty finding any employment, let alone one that paid her commensurate to her salary before the marriage or allowed her to enjoy her standard of living during the marriage. Thus, an award of permanent maintenance was not improper. See *Murphy*, 359 Ill. App. 3d at 303.

¶ 30    In so ruling, we note that Scott argues that the trial court should have awarded time-limited and reviewable maintenance rather than permanent maintenance.  This argument suggests that permanent maintenance is everlasting.  It is not.  *Shen v. Shen*, 2015 IL App (1st) 130733, ¶ 84.  A better description of "permanent" maintenance is that it is "indefinite" maintenance.  An award of permanent maintenance may be modified or terminated either by agreement or as provided in section 510(c) of the Dissolution Act. See *In re Marriage of Culp*, 341 Ill. App. 3d 390, 397 (2003) (burden of proving change in circumstances to justify termination or modification on paying party); *In re Marriage of Dunseth*, 260 Ill. App. 3d 816, 833 (permanent maintenance appropriate "where it is evident the recipient spouse is either unemployable or employable only at an income considerably lower than the standard of living established during the marriage").  As this court in *Shen* explained:

> "Trial judges cannot gaze into a crystal ball and foresee what the future holds for the parties. This explains why permanent maintenance is always modifiable or terminable should there occur a substantial change in circumstances."  *Shen*, 2015 IL App (1st) 130733, ¶ 87.

Thus, Scott's concerns that the maintenance award can never be modified are unfounded.

¶ 31    Third, we do not believe that the trial court abused its discretion in setting the amount of maintenance.  Scott emphasizes that the marriage was of short duration and therefore a substantial award was unwarranted.  However, the length of the marriage was just one of several factors to consider. See *In re Marriage of Connors*, 303 Ill. App. 3d 219, 229 (1999).  Other relevant factors included Scott's income at the time of judgment (*In re Marriage of Rogers*, 213 Ill. 2d 129, 138 (2004)), the parties' standard of living during the marriage (*Shinn*, 313 Ill. App. 3d at 322), the division of marital assets (*In re Marriage of Lee*, 246 Ill. App. 3d 628, 646 (1993)), and Toby's

ability to maintain that standard of living on her own (*Shinn*, 313 Ill. App. 3d at 322). As Scott's annual income during the marriage was substantial (approximately $1.7 million), the parties' standard of living was high ($80,000 to $90,000 per month), the marital estate was relatively small ($190,000 at the time of the judgment of dissolution), and Toby's health issues and having forgone career opportunities during the marriage indicated she could not earn any significant income herself, the trial court's award of maintenance in an amount exceeding $42,000 per month was not an abuse of discretion. *Dunlap*, 294 Ill. App. 3d at 772.

¶ 32     We additionally reject Scott's argument that the trial court "mindlessly" determined that the maintenance award should be based on 30% of his income. Scott specifically suggested in his closing argument on October 30, 2017, that the trial court should set the maintenance award at 30% of his gross income from his base salary of $500,000. The trial court accepted that suggestion but instead awarded 30% of Scott's average total annual compensation of $1.7 million, which included his bonuses and stock incentives. (Scott acknowledged that during the marriage there was never a year that he earned just a base salary and no bonus or stock incentives). As the trial court is to consider all sources of a payor's income when determining maintenance (*In re Marriage of Ruvola*, 2017 IL App (2d) 160737, ¶ 18), the trial court's decision to base the maintenance award on Scott's average total compensation was not improper.

¶ 33                          C. Reimbursement to the Marital Estate

¶ 34     Scott next argues that the trial court erred in ordering him to reimburse the marital estate for (1) a $400,000 loan that the parties incurred and repaid during the marriage and (2) a $35,000 withdrawal from Toby's retirement account.

¶ 35     Section 503(c-2) of the Dissolution Act authorizes the trial court to order an estate receiving a contribution of marital property to reimburse the marital estate, provided the party

seeking reimbursement can trace the marital contribution by clear and convincing evidence. 750 ILCS 5/503(2) (West 2014). Testimony by itself can constitute clear and convincing evidence. *In re Marriage of Henke*, 313 Ill. App. 3d 159, 174 (2000). A trial court's decision regarding reimbursement will not be overturned unless it is against the manifest weight of the evidence. *In re Marriage of Miller*, 231 Ill. App. 3d 480, 487 (1992).

¶ 36    As to the $400,000 loan, the record reveals that, in early 2004, less than three weeks after the parties' marriage, Scott borrowed $400,000 from his friend, Mark Koulogeorge, subject to a promissory note which both he and Toby signed. Scott repaid the loan in 2009 or 2010 with approximately $444,000 of marital funds from his settlement with Skype. Scott testified that he used $125,000 to pay for in vitro fertilization treatments and an egg donor to conceive their second child, among other things. He acknowledged, however, that at the time of the loan Toby was pregnant with their first child.

¶ 37    Toby testified that Scott asked her to sign the promissory note "to pay for debts [to former employers] that he had incurred before the marriage." Toby further testified that she never saw any of the money received as Scott deposited it into his personal account. The parties stipulated that Koulogeorge's testimony would be that Scott wanted to take a loan from him to "pay off loans for personal debts that were at a high interest rate; [he did] not know how much outstanding debt Scott had but he thought the amount of his debt was commensurate with the amount of the loan."

¶ 38    The trial court rejected Scott's testimony as non-credible and determined that Scott used the funds to pay off non-marital debt. As the trial court's determination was supported by both Toby's testimony and Koulogeorge's stipulated testimony, its decision was not against the manifest weight of the evidence. See *Henke*, 313 Ill. App. 3d at 174.

¶ 39    As to the withdrawals from Toby's retirement accounts, Scott acknowledged that he withdrew $85,000. Of that amount, he used $50,000 to purchase antiques in Singapore. He asked Toby if he could withdraw $50,000 from her account. She told him that she did not want him to. Nonetheless, he did it anyway. (Scott does not dispute that Toby is entitled to reimbursement for that $50,000). As to the other $35,000, Scott testified that he needed that money for the parties' living expenses. He did not indicate that he ever asked Toby if he could use that money. The trial court's determination therefore that the marital estate should reimburse Toby for that $35,000 was not against the manifest weight of the evidence. See *Miller*, 231 Ill. App. 3d at 487. Although Scott insists that it was incumbent upon Toby to provide evidence that $35,000 was not a gift to the marital estate, Scott's testimony alone was sufficient to establish that it was not such a gift as Toby did not agree to it. See *Henke*, 313 Ill. App. 3d at 174.

¶ 40                            D. Distribution of the Marital Estate

¶ 41    Scott next attacks the trial court's decision to award 67% of the marital estate to Toby. At the time of the 2015 judgment of dissolution, the marital estate was valued at approximately $190,000. A trial court has broad discretion in the division of marital assets, and we will reverse its determinations only if it is clear that the trial court has abused that discretion. *In re Marriage of Wojcik*, 362 Ill. App. 3d 144, 161 (2005).

¶ 42    Scott argues that the trial court should have given additional weight to the extensive contribution to the accumulation of marital assets that he made to the marriage. See 750 ILCS 5/503(d)(1) (West 2016). He also contends that the trial court gave too much weight to Toby's "relatively limited contributions to the marriage overall" as a homemaker. As such, Scott is essentially urging us to reweigh the statutory factors in his favor. That is of course something that we cannot do. *In re Marriage of Virdi*, 2014 IL App (3d) 130561, ¶ 26.

¶ 43    We note that in addition to specifically considering the contribution of each party to the marriage, the trial court also considered: (1) the duration of the marriage; (2) the relevant economic circumstances of each party; (3) the age, health, amount and sources of income of each of the parties; and (4) the reasonable opportunity of each spouse of future acquisition of capital assets and income.  As noted earlier, Scott was in good health with an average income of $1.7 million while Toby was in poor health and without the ability to earn any significant income.  Based on all of the relevant factors that the trial court considered, we cannot say that the trial court's decision to award Toby approximately $60,000 more in marital assets than Scott constituted an abuse of discretion.

¶ 44                                E. Classification of Assets

¶ 45    Scott next argues that Judge Ukena erred in classifying his entire $300,000 wine collection as a marital asset.  We note, however, that in a hearing before Judge Smith, Scott's attorney acknowledged that Scott had not established by clear and convincing evidence that the wine collection was nonmarital property and therefore Judge Ukena had properly disposed of that property in its judgment.  As Scott specifically acquiesced to the trial court's finding regarding his wine collection, he cannot complain about it now before this court.  See *Swope*, 213 Ill. 2d at 217.

¶ 46                                F. Dissipation of Assets

¶ 47    Scott next argues that the trial court erred in finding that he dissipated marital assets.  Dissipation is the use of marital funds for the sole benefit of one party for a purpose unrelated to the marriage at a time when the marriage is undergoing a breakdown.  *In re Marriage of O'Neill*, 138 Ill. 2d 487, 497 (1990).  Whether a particular course of conduct is dissipation depends on the facts of the case.  *In re Marriage of Drummond*, 156 Ill. App. 3d 672, 683 (1987).  A trial court's determination regarding dissipation will not be reversed unless it is against the manifest weight of

the evidence (*In re Marriage of Laroque*, 2018 IL App (2d) 160973, ¶ 87), that is, unless "the opposite conclusion is clearly evident or the finding is arbitrary, unreasonable, or not based in evidence" (*Samour, Inc. v. Board of Election Commissioners of the City of Chicago*, 224 Ill. 2d 530, 544 (2007)).

¶ 48    Scott argues that his expenditures did not constitute dissipation because he spent money in similar ways during the marriage. He further contends that money he spent on the children, such as taking them on vacations, could not constitute dissipation. Toby responds that expenditures that were acceptable during the marriage may nevertheless constitute dissipation if they are made while the marriage is undergoing a breakdown. Moreover, she argues that the amounts at issue— $63,300.12 on post-separation vacations, $17,647.59 for his non-marital residence, and $44,594 on cigars—were excessive and therefore dissipation.[1]

¶ 49    Toby is correct that expenditures are not exempted from consideration as dissipation simply because similar expenses were made during the marriage. "The issue is not whether the spending is consistent with that engaged in prior to the breakdown but, rather, whether such

---

[1] Beyond this amount of dissipation that Judge Ukena found, Judge Smith found that Scott had dissipated an additional $49,375.08 of assets between the close of proofs and the judgment of dissolution, and he allocated $33,081.50 of this amount to Scott. Scott argues that this was also improper. However, at a hearing on dissipation, Scott's attorney acknowledged that Scott had dissipated $49,375.08 in assets and argued that $33,081.50 should be allocated to Scott. Judge Smith then indicated that he was "going to adopt [the] arguments" of Scott's attorney. Scott cannot complain of a finding that he specifically asked the trial court to make. See *Swope*, 213 Ill. 2d at 217.

spending was for the sole benefit of one of the spouses for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown." *In re Marriage of Hagshenas*, 234 Ill. App. 3d 178, 195 (1992). Additionally, excessive spending—even on the parties' children—may constitute dissipation. *In re Marriage of Lee*, 246 Ill. App. 3d 628, 633 (1993) ("Expenditures for the children's immediate reasonable needs is a permissible use of marital funds. However, excessive expenditures, even if for a permissible purpose, may constitute a dissipation of marital assets."). Based on the exorbitant amount that Scott spent on vacations and cigars, we cannot say that the trial court's decision that those expenditures constituted dissipation was against the manifest weight of the evidence. See *Laroque*, 2018 IL App (2d) 160973, ¶ 87.

¶ 50    Further, although Scott argues that his expenditures on his nonmarital home benefited the marriage because that is the home where Toby had been living, the record reveals that Scott did not incur those expenses until Toby had already moved out of the home. Thus, the trial court's finding that the home improvements constituted dissipation as well was not against the manifest weight of the evidence. *Id.*

¶ 51                                G. Attorney Fees

¶ 52    Scott next argues that the trial court erred in ordering him to contribute to Toby's attorney fees. Scott contends that the trial court's ruling, requiring him to pay 67% of the parties' attorney fees, was erroneous because the trial court made no finding that Toby had an inability to pay her own attorney fees.

¶ 53    On appeal of an attorney fees award, we will not reverse a trial court's order unless we conclude that the trial court abused its discretion. *In re Marriage of Heroy*, 2017 IL 120205, ¶ 13. The presumption is that each party will pay his or her own attorney fees. *In re Marriage of*

*Sanborn*, 78 Ill. App. 3d 146, 152 (1979). A party who seeks attorney fees must establish (1) his or her own inability to pay his or her own fees and (2) the ability of the opposing party to pay the fees requested. *Heroy*, 2017 IL 120205, ¶ 19. The "inability to pay" requirement is met "if, after consideration of all the relevant statutory factors, the court finds that requiring the party to pay the entirety of the fees would undermine his or her financial stability." *Id.* The relevant statutory factors are those set forth in section 503 for the division of marital assets and, if an award of maintenance is issued, section 504. *Id.* ¶ 20.

¶ 54    Here, a review of the record indicates that the trial court properly considered the statutory factors to conclude that Toby was not able to pay the entirety of her fees. The relevant evidence included that: (1) Toby had forgone her career to raise the parties' children; (2) due to changes in the industry she could not resume her prior career; and (3) her health limited her employment prospects as well. As the record supports a finding that Toby could not pay the entirety of her fees and that Scott had the ability to contribute to those fees, the trial court did not abuse its discretion in ordering Scott to contribute to those fees. *Id.*

¶ 55    Scott additionally argues that, in ordering contribution, the trial court miscalculated the amount owed to Toby. Scott contends that the correct amount based on a 67% to 33% split should have been $340,00, not $500,000 which the trial court ordered him to pay. Toby agrees with Scott on this point and acknowledges that the trial court's order should have indicated that Scott was obligated to pay $340,000 towards her attorney fees. Accordingly, we modify the trial court order to reflect that Scott should pay $340,000 as contribution towards Toby's attorney fees, not $500,000. See Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994).

¶ 56                                III. CONCLUSION

¶ 57    For the reasons stated, the judgment of the circuit court of Lake County is affirmed as modified.

¶ 58    Affirmed as modified.