*In re* MARRIAGE OF PAULA ZANDER, Petitioner-Appellee and Cross-Appellant, and JOHN ZANDER, Respondent-Appellant and Cross-Appellee.

Fourth District   No. 4—94—0969

Argued June 14, 1995.—Opinion filed July 25, 1995.

James R. Potter and Craig A. Randle (argued), both of Londrigan, Potter & Randle, P.C., of Springfield, for appellant.

Howard W. Feldman, Fredric Benson (argued), and Howard M. Neuger, all of Feldman & Wasser, of Springfield, for appellee.

R. Mark Mifflin (argued), of Giffin, Winning, Cohen & Bodewes, P.C., of Springfield, guardian *ad litem*.

JUSTICE McCULLOUGH delivered the opinion of the court:

On December 22, 1993, following the close of all the evidence, Judge John Keith read into the record his detailed findings of fact and oral orders regarding the parties' action for dissolution of marriage. Judge Keith awarded petitioner (1) custody of the parties' two minor children with liberal visitation for respondent (the parties also have an adult child residing with petitioner); (2) slightly more than

one-half of the parties' marital assets, including the marital residence free and clear of the mortgage (which was assigned to respondent); (3) child support of $3,600 per month, a sum below the statutory guidelines of $5,455.50 per month; (4) permanent maintenance of $8,300 per month; and (5) attorney fees of $30,000. Judge Keith directed petitioner's counsel to prepare a written judgment and orders of withholding setting forth the findings of the court. The judge then stated:

"That the terms herein are effective as of January 1, 1994 as to the maintenance and child support provisions, and except for the previous orders regarding the holiday visitation, all other orders of property, child custody, visitation and other items are effective *instanter*.

Any issues of reconsideration will not be heard by this Court until a written judgement has been entered."

No written order was entered prior to January 18, 1994, when Judge Keith was removed from the bench per an order of the Illinois Courts Commission. Following petitioner's motion for entry of judgment and submission of a proposed order, successor Judge Carmody on April 28, 1994, granted the motion and entered judgment *nunc pro tunc* to February 1, 1994. It is undisputed that Judge Keith decided all of the issues in the case and that the written judgment conforms to the decision made by him.

Respondent filed a motion for rehearing pursuant to section 2—1203 of the Code of Civil Procedure (Code) (735 ILCS 5/2—1203 (West 1992)), challenging maintenance, property distribution, custody, and the propriety of entry of judgment by Judge Carmody. Following a hearing on respondent's motion, Judge Carmody made a docket entry indicating he had reviewed the transcripts of proceedings before Judge Keith, the authorities cited by the parties, and arguments of counsel, and was allowing the motion in part. He reduced maintenance from $8,300 to $4,500 per month, reduced respondent's summer visitation with the children from five weeks to four, ordered the marital assets reapportioned such that each party receive equal shares of approximately $911,000 with petitioner to receive $200,000 in income-producing assets (as opposed to the prior provision of $35,000 in income-producing assets), and adopted the findings of Judge Keith in all other material respects. The amended judgment order was entered October 3, 1994.

On appeal, respondent contends he is entitled to a new trial because (1) entry of judgment by a successor judge based on the oral findings and orders of his predecessor was improper, (2) he was denied a right to post-trial reconsideration by the trier of fact, (3) there was

a showing of bias on the part of the predecessor judge, and (4) the successor judge erred in calculating the reduction in maintenance. Petitioner cross-appeals the reduction in maintenance provided for in the amended judgment.

■ There is no dispute that Judge Keith's findings did not constitute a formalized final judgment. Supreme Court Rule 272 provides:

> "If at the time of announcing final judgment the judge requires the submission of a form of written judgment to be signed by him, the clerk shall make a notation to that effect and the judgment becomes final only when the signed judgment is filed." (134 Ill. 2d R. 272.)

While respondent admits that Judge Keith did make oral findings and orders relative to all issues in contention, he contends Judge Carmody improperly entered judgment based on those findings because Judge Keith did not intend his findings to be considered a final order and since Judge Carmody was not the trier of fact, he lacked the opportunity to observe the witnesses and make credibility determinations. Respondent cites *In re Marriage of Sorenson* (1984), 127 Ill. App. 3d 967, 968, 469 N.E.2d 440, 441, a case inapposite to the facts here because the predecessor judge had announced no orders or findings of fact, and the successor judge entered an order respecting custody based on the transcripts alone. Judge Keith, as the trier of fact, had observed the witnesses, made credibility determinations, and expressly resolved all issues in controversy. Respondent has pointed to nothing in Judge Keith's oral pronouncement that renders his findings preliminary or tentative, *i.e.*, that entry of a written judgment would be anything more than a ministerial act. Judge Carmody's entry of a judgment order merely formalized those rulings.

In *In re McMahon* (1991), 221 Ill. App. 3d 383, 581 N.E.2d 1208, a substitute judge signed an order for involuntary commitment based on the original judge's oral findings that the respondent was a person subject to involuntary commitment and the pronouncement was a final judgment and an appealable order. (*McMahon*, 221 Ill. App. 3d at 388, 581 N.E.2d at 1211-12.) This court held it was not error for the substitute judge to sign the order because respondent on appeal did not contest any of the factual findings and there was nothing of record to indicate the original judge would have entered an order different from her oral factual findings. (*McMahon*, 221 Ill. App. 3d at 390, 581 N.E.2d at 1212-13.) We hold Judge Carmody properly entered judgment based on Judge Keith's findings and orders.

■ Respondent next argues he was improperly denied a new trial in his section 2—1203 post-trial motion because post-trial review by a successor judge denies him a statutory right to reconsideration by the trier of fact. Respondent cites no authority for this view.

"Judges of a court exercise the power vested in the courts as such and not in them as officers. \*\*\* The authority and power of a judge are incident to and grow out of the power of the court itself. The court continues although the term of the judge has terminated, and where he is succeeded by another, the court retains its identity. It is the same court. Any application that can be made to the court may always be made to the court however it is constituted." *Department of Public Works & Buildings v. Legg* (1940), 374 Ill. 306, 309, 29 N.E.2d 515, 517.

See also *People v. Williams* (1990), 138 Ill. 2d 377, 388, 563 N.E.2d 385, 389-90 (appeal is the proper remedy when an appealable order is entered "and no timely reconsideration is obtained from the judge who entered it or from that judge's successor").

Section 2—1203 provides only that a party may, within 30 days after entry of judgment, file a motion for a rehearing, or a retrial, or to modify or vacate the judgment, or for other relief. (735 ILCS 5/2—1203 (West 1992).) It does not grant respondent a right to a new trial if happenstance or court procedure requiring the rotation of judges prevents the original judge from presiding over post-trial motions. Acceptance of respondent's view would have grave consequences for litigants and be a meaningless waste of judicial resources. Judge Carmody did not err in denying respondent's motion for a new trial.

■ Respondent next argues that he was entitled to a new hearing due to the potential bias of Judge Keith stemming from the proceedings before the Illinois Courts Commission on charges of wilful misconduct in office.

"A trial judge is presumed to be impartial, and the burden of overcoming this presumption rests on the party making the charge of prejudice, who must present evidence of personal bias stemming from an extrajudicial source and evidence of prejudicial trial conduct." (*In re Marriage of Hartian* (1991), 222 Ill. App. 3d 566, 569, 584 N.E.2d 245, 247.)

Alleged erroneous findings and rulings are an insufficient basis to show personal bias or prejudice for or against a litigant. (*Hartian*, 222 Ill. App. 3d at 569, 547 N.E.2d at 247.) Respondent has failed to present any evidence supporting his allegation of bias.

■ Respondent last argues that the maintenance award as adjusted by Judge Carmody was in excess of the amount necessary to maintain petitioner's standard of living. The propriety, amount and duration of a maintenance award are in the court's discretion and will not be disturbed absent abuse, *i.e.*, where no reasonable person would take the view adopted by the trial court. *In re Marriage of Cheger* (1991), 213 Ill. App. 3d 371, 378, 571 N.E.2d 1135, 1140.

Judge Carmody utilized three scenarios for determination of the maintenance award. Petitioner's own evidence showed that her expenses for maintaining her standard of living and that of all of her children were $5,304. To this sum Judge Carmody made additions of $700 for real estate taxes and insurance, $400 for car replacement, an additional $500 for residence repair and maintenance, and $1,000 for income tax liability. He then subtracted $3,600 child support, arriving at an approximate total of $4,300.

Under the second scenario, Judge Carmody considered respondent's adjusted affidavit listing $5,295 as petitioner's expenses, to which he added $400 for car replacement, an additional $500 for repair of the residence, $1,000 for income tax liability, and an increase of $900 to the $100 travel expense, for an approximate total of $8,100, less $3,600 child support, or $4,500.

Under the third scenario, Judge Carmody considered testimony by both parties that respondent gave petitioner at least $5,000 per month for general household expenses, which excluded real estate taxes and insurance, car replacement, and travel expenses. He made adjustments for these items of $700, $400, and $1,000, respectively, plus $1,000 for income tax liability, for a total of $8,100, less child support, or $4,500.

Respondent contests the adjustments made by Judge Carmody in determining the amount of maintenance. He argues against the car repair allowance, house repair allowance and contests other expenses included on petitioner's affidavit of expenditures.

Respondent also contends that Judge Carmody failed to consider income derived from the $200,000 in income-producing assets awarded to petitioner, which he estimates will yield $1,000-per-month income. Judge Carmody reapportioned the marital property to provide petitioner with income-producing assets. He clearly was aware of its impact on his calculations of maintenance and expressly stated that he had considered all relevant factors pursuant to section 504 of the Illinois Marriage and Dissolution of Marriage Act. (750 ILCS 5/504(a) (West 1992).) It is apparent from the record that Judge Carmody made a thorough examination of the evidence in attempting to fashion an award tied to the standard of living established during the marriage. Respondent's argument is totally without merit. The maintenance was reduced on rehearing from $8,300 to $4,500. Moreover, respondent's monthly expendable income far exceeds that available to petitioner.

Petitioner cross-appeals the reduction in maintenance from $8,300 per month to $4,500 on two bases: (1) respondent can afford this amount of maintenance and still maintain his own standard of living, and (2) part of the standard of living was the ability to have

extra funds to save and invest. She points to no items of expense omitted from Judge Carmody's calculations indicating that the modified maintenance of $4,500 fails to meet her needs or standard of living, nor does she supply any authority for her view that such standard of living requires her to receive funds available for investment purposes. Although this court might have set the maintenance at a higher level, the trial court did not err in setting maintenance. Accordingly, the modification of maintenance from $8,300 to $4,500 is affirmed.

Affirmed.

COOK and STEIGMANN, JJ., concur.