*In re* MARRIAGE of NANCY ELIZABETH SHINN, Petitioner-Appellant and Cross-Appellee, and JOHN ROBERT SHINN, Respondent-Appellee and Cross-Appellant.

Fourth District   No. 4—99—0695

Argued April 18, 2000.—Opinion filed May 15, 2000.

Arthur M. Lerner (argued), of Lerner & Kirchner, of Champaign, for appellant.

Sarah B. Tinney (argued), of Erwin, Martinkus & Cole, Ltd., of Champaign, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

In April 1999, after a lengthy hearing, the trial court issued a written judgment order in the dissolution of Nancy and Robert Shinn's marriage. The trial court made final determinations with respect to child support, property and debt apportionment, maintenance, and attorney fees, ordering petitioner ex-wife to pay $1,500 monthly maintenance to respondent ex-husband, subject to review after 24 months, and respondent's reasonable attorney fees.

In August 1999, the trial court held a hearing on the issue of reasonable attorney fees. At the conclusion, the trial judge denied respondent his reasonable attorney fees, finding respondent failed to present sufficient evidence to establish the amount of the fees. The trial court denied a motion to reopen the fee issue to allow respondent's counsel to reconstruct her fees.

Petitioner filed a timely notice of appeal with this court, arguing the trial court abused its discretion by ordering her to pay maintenance. Respondent cross-appealed, arguing the trial court abused its discretion in denying his reasonable attorney fees and by not allowing counsel to reconstruct her billing records. For reasons set forth below, we affirm in part and reverse in part and remand with directions.

## I. BACKGROUND

John and Nancy Shinn married in May 1982. The parties had two children during their marriage, born in October 1985 and in May 1988.

Petitioner's family owns Mettam Safety Supply, Inc. (Mettam Safety), a safety equipment distributorship. In June 1982, petitioner's parents hired respondent as a salesman for Mettam Safety. Respondent later became a field sales manager for the company. In 1984, petitioner also took a position with Mettam Safety, starting as a telemarketing manager and later ascending into an upper management position. Eventually, petitioner became majority shareholder in Mettam Safety.

In the spring of 1997, petitioner filed for dissolution of marriage. The trial court granted the dissolution in September 1997 and reserved the determination of ancillary issues.

In May 1998, after a contested hearing, the trial court awarded petitioner primary residential custody of the two children during the

school year, with respondent getting visitation one night a week and on alternating weekends. The trial court awarded respondent primary residential custody during the children's summer break from school, with the petitioner getting alternate weekends for visitation during that period. The court specified a schedule for holiday visitations.

During July and August 1998, the court held five days of hearings on the financial issues. The court ordered respondent to pay $572 per month in child support (i.e., $285.70 biweekly), with that responsibility abating during the summer months while the children were in respondent's custody. The court ordered petitioner to pay the cost of the children's lessons, activity fees, tuition, books, uniforms, lunches, and other special events related to their attendance at parochial school, even during the summer months when the children were with respondent. In addition, the trial court ordered petitioner to pay for the children's health insurance and other incidental medical costs, since they would be covered under her policy at Mettam Safety.

The parties had three major assets: (1) the marital home, valued between $233,000 and $255,000; (2) petitioner's 401(k) plan through Mettam Safety, valued at about $167,244; and (3) respondent's 401(k) plan through Mettam Safety, valued at about $202,025. The court awarded the marital home to petitioner, as well as the responsibility of paying the balance of the mortgage (estimated to be between $133,000 and $147,000). The court awarded each party his or her respective 401(k) plan.

In addition, the court awarded petitioner ownership of the parties' Tennessee walking horse and mixed breed pony, as well as 205.5 shares of Mettam Safety stock that had been gifted to her by her family. The court divided the remainder of the parties' bank accounts, life insurance policies, and personal property. However, to achieve an equitable distribution of the marital estate, the court ordered petitioner to pay respondent $25,000. Neither party challenges the trial court's order regarding custody and the division of assets.

Petitioner testified her 1997 salary from Mettam Safety was $58,143.82. Petitioner was the majority shareholder in Mettam Safety (which the parties stipulated was worth between $2 and $3 million) and was entitled to her share of distributions taken from the corporation's profits. In 1997, in addition to her annual salary, petitioner was entitled to $343,541 in distributions from Mettam Safety; petitioner's tax return reflected she actually received $180,000 in distributions. Petitioner stated she was required to pay taxes on her entire share of the distribution, whether or not she actually received the money in hand. According to petitioner, the $180,000 she actually received was not primarily spendable income but was used to pay her

tax liability for that year, which totaled $118,536. In 1996, the parties jointly paid $130,534 in taxes.

Rex H. Kallembach, a certified public accountant, also testified concerning petitioner's income from Mettam Safety. He told the court Mettam Safety was a "subchapter S corporation" (see 26 U.S.C. § 1366 (1994)), which is a type of "pass through" entity. All the net profits flowed through the corporation to the individuals entitled to receive distributions, so the distributions were taxed at the individual rate rather than the corporate rate. Kallembach concluded petitioner was entitled to substantially more money than the $180,000 she actually received. Taking petitioner's 1997 distributions from Mettam, Kallembach explained how, even though she only actually received $180,000 in cash, she was entitled to receive the balance of the $343,541 in distributions for that year. Further, Kallembach noted since petitioner had already paid taxes on the $343,541, she could take the remaining balance at a later date without tax consequences.

During their marriage, petitioner and respondent borrowed money from Mettam Safety to help purchase their house. In addition, petitioner had taken other loans to help with expenses. Kallembach stated these loans could be repaid by petitioner as any other loan, or Mettam Safety could simply "forgive" the loans and classify them as a distribution to petitioner.

Respondent testified he had taken a pay cut when he was terminated from Mettam Safety in 1997. The parties' 1996 joint income was $115,387. Respondent's half of the income was about $59,000. During the years spanning 1989 to 1997, respondent earned between $51,334 and $64,043. Respondent stated he was now a bank officer earning in gross about $3,163.94 per month, or $38,000 annually.

In addition, during respondent's tenure at Mettam Safety, the company paid many of respondent's incidental expenses. The company furnished respondent a car and paid all insurance and repair costs. During the parties' marriage, Mettam Safety furnished the parties two other cars for business and personal use essentially at no charge. Further, Mettam Safety paid for respondent's cellular phone charges, country club membership, numerous personal expenses, and health insurance during his employment. The bank where respondent now works pays for his country club membership, Rotary club membership, and his business-related expenses. However, it does not pay for his car, car insurance, car repairs, cellular phone bills, or health insurance.

Respondent testified Mettam Safety paid for business trips used as vacations by the parties and their children. Often, the parties charged

costs for lodging, transportation, and recreational activities for the entire family to Mettam Safety. Respondent further testified Mettam Safety paid such personal expenses of the parties as home office furniture, family meals, resealing the driveway of the parties' marital home, and a home computer.

After considering the evidence and the relevant statutory factors set forth in the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/503 through 505, 508 (West 1998)), the trial court found respondent eligible for maintenance (750 ILCS 5/504 (West 1998)) and ordered petitioner to pay $1,500 per month to respondent. Further, the trial court found respondent financially unable to pay his attorney fees (750 ILCS 5/508 (West 1998)) and ordered petitioner to pay respondent's reasonable attorney fees.

The parties were unable to agree on what constituted reasonable attorney fees, so in August 1999 the court held a hearing on attorney fees. Respondent's attorney and the paralegal who assisted on the case testified about the amount and type of work performed. In addition, respondent introduced computer-generated billing statements (respondent's exhibits B and C), which listed the date, activity performed, amount of time worked, the cost, and the party performing the work. Respondent's attorney also introduced the contract for services with respondent in which respondent agreed to pay the attorney $150 per hour. Respondent's total attorney fees were approximately $46,000.

The trial court found respondent's counsel's evidence inadequate to satisfactorily establish the amount of her fees. Specifically, without contemporaneous time sheets, the trial court concluded it was unable to determine what amount of money constituted counsel's reasonable fees. The trial court refused to award respondent his reasonable attorney fees and denied counsel's motion to reopen the fee issue. This appeal followed.

## II. ANALYSIS

### A. Maintenance

On appeal, petitioner argues the trial court abused its discretion in ordering her to pay $1,500 a month in maintenance to respondent. Petitioner argues (1) respondent is not now in a substantially different financial position from when the parties were married; and (2) petitioner and respondent are in similar financial situations, so petitioner should not be saddled with maintenance, since she had to pay $25,000 to respondent and is required to pay the children's health and activity costs. We disagree.

■ The trial court is accorded broad discretion to determine the

propriety, amount, and duration of maintenance, and its judgment will not be overturned absent an abuse of discretion. *In re Marriage of Zander*, 273 Ill. App. 3d 669, 673, 653 N.E.2d 440, 442 (1995). When determining the amount and duration of maintenance, the trial court must balance the ability of the spouse to support himself in some approximation to the standard of living he enjoyed during the marriage. *In re Marriage of Charles*, 284 Ill. App. 3d 339, 348, 672 N.E.2d 57, 64 (1996). Simply put, the trial court's job is to determine whether one party needs maintenance and, if so, whether the other party has the ability to pay. *In re Marriage of Werries*, 247 Ill. App. 3d 639, 651, 616 N.E.2d 1379, 1390 (1993).

■While petitioner alleges respondent is not now in a substantially different financial position than during the marriage, the evidence supports a different conclusion. In the first place, respondent's net pay was over $10,000 less a year as a bank officer than his annual net earnings since 1987 with Mettam Safety. Respondent became responsible for financing his own vehicle, car insurance, and health insurance, all of which Mettam Safety previously paid.

In determining the propriety and amount of maintenance, the trial court could properly consider such other things as respondent's need to secure and maintain a new residence, using only one income. Further, the trial court ordered respondent to pay about $572 a month in child support.

The $25,000 payment petitioner relies upon as evidence of respondent's stable financial situation was a payment required by the trial court to achieve a relatively equal distribution of marital assets, not to enhance respondent's financial situation. The trial court was entitled to conclude respondent is in fact in a substantially less favorable position than when the parties were married.

Petitioner has a significantly higher salary at Mettam Safety than respondent does as a bank officer. Further, petitioner is the majority shareholder in Mettam Safety, which the parties agreed was worth $2 to $3 million. Petitioner admitted she is entitled to substantial distributions as the majority shareholder.

Furthermore, Kallembach testified petitioner is entitled to receive, at some future date she determines, certain monetary distributions not taken when declared. In 1997, petitioner was entitled to receive $343,541 in distributions, took only $180,000 in cash, and was still entitled to receive the remaining $163,541. In 1996, petitioner was entitled to around $298,000 in distributions from Mettam Safety.

Although petitioner took several loans from Mettam Safety to pay expenses during and after the divorce, Kallembach testified such loans can simply be forgiven by being reclassified as distributions rather

than loans. If she wishes, petitioner can simply deduct the amount of money she has received in loans from the money Mettam Safety owes her in distributions.

As an officer at the bank, respondent earns a net salary of around $2,380 a month. Petitioner points out respondent included the cost of the mortgage on the marital home in his affidavit, which she pays because the court awarded her the marital residence. However, even deducting the mortgage payment, respondent has monthly expenses of about $2,087, leaving respondent about $290 a month, out of which he must pay $571.40 a month in child support. Ultimately, respondent has a $261 monthly deficit.

The trial court could properly conclude respondent lacks sufficient property and income to meet his reasonable needs. Maintenance may be appropriate where a spouse is not able to earn enough money to meet his needs, even if he is employed. *In re Marriage of Swanson*, 275 Ill. App. 3d 519, 526, 656 N.E.2d 215, 220 (1995). Given petitioner's substantial financial interest in Mettam Safety, petitioner has the ability to pay maintenance.

## B. Attorney Fees

On cross-appeal, respondent argues the trial court abused its discretion (1) by not awarding him reasonable attorney fees, and (2) by denying counsel's motion to reopen the attorney fee issue in order to reconstruct her hours. We agree the trial court abused its discretion in failing to award respondent reasonable attorney fees.

The trial court's decision regarding attorney fees will not be reversed on appeal absent an abuse of discretion. *In re Estate of Callahan*, 144 Ill. 2d 32, 43-44, 578 N.E.2d 985, 990 (1991). Generally, the burden of proof is on the attorney to establish the value of his services; an appropriate fee consists of reasonable charges for reasonable services. *Kruse v. Kuntz*, 288 Ill. App. 3d 431, 435, 683 N.E.2d 1185, 1188 (1996). The attorney requesting fees must present detailed records maintained during the course of the litigation containing facts and computations upon which the charges are predicated. *Kruse*, 288 Ill. App. 3d at 436, 683 N.E.2d at 1188. In addition, the attorney must specify the services performed, by whom they were performed, the time expended, and the hourly rate charged. *Kruse*, 288 Ill. App. 3d at 435, 683 N.E.2d at 1188. However, while contemporaneous records generally ensure greater accuracy, the attorney need not keep detailed time records contemporaneously with the litigation if the attorney presents sufficient evidence to allow the trial court to determine a reasonable fee for her services. *Kruse*, 288 Ill. App. 3d at 436, 683 N.E.2d at 1188.

The facts of *Kruse* are particularly noteworthy given the factual circumstances of the case at bar. Respondent Kuntz argued the trial court abused its discretion in awarding petitioner Kruse attorney fees, because Kruse's attorney failed to submit original copies of his time records. However, Kruse's attorney presented the court with documents detailing the work he performed, the particular services performed, who performed the work, the time expended, and the hourly rate charged. The trial court found this documentation sufficient to establish reasonable attorney fees, and we affirmed its decision. *Kruse*, 288 Ill. App. 3d at 435-36, 683 N.E.2d at 1188.

> "To justify a fee, more must be presented than a mere compilation of hours multiplied by a fixed hourly rate or bills issued to the client, since this type of data, without more, does not provide the court with sufficient information as to their reasonableness—a matter which cannot be determined on the basis of conjecture or on the opinion or conclusions of the attorney seeking fees. Rather, the [evidence] must specify the services performed, by whom they were performed, the time expended thereon[,] and the hourly rate charged therefor." *Kruse*, 288 Ill. App. 3d at 435, 683 N.E.2d at 1188.

■ In the case at bar, respondent's attorney did not provide the actual contemporaneous time records she kept, but she testified 90% of the time she wrote down her hours the same day. Further, while not having the contemporaneous time records, the attorney presented the court with two sets of computer-generated documents (respondent's exhibits B and C) detailing the work performed. Each exhibit listed the time and billing records for respondent's case, but each was recorded in a slightly different format. Respondent's exhibit B was a compilation of monthly billing summaries listing what work was performed, the day it was performed, and the number of hours expended. Each billing summary listed the total hours billed, as well as the total amount of the charges incurred for that billing period.

Respondent's exhibit C was a collection of computer-generated billing records. These records listed the individual services performed, the days on which they were performed, who performed the work (either the attorney or her paralegal), the amount of time it took to perform the services, the hourly billing rate, and the total billing charge for each service performed. A total charge for all services rendered was also included.

In its written dissolution judgment, the trial court specifically found respondent was entitled to reasonable attorney fees. However, at the hearing to determine counsel's reasonable fees, the trial court held, absent contemporaneous time sheets, the exhibits offered by

respondent's counsel were not sufficient to establish reasonable attorney fees. As we have noted, contemporaneous time sheets are not necessarily required. The party seeking fees must present sufficient evidence from which the trial court can accurately determine the services rendered and the amount of money that constitutes reasonable fees.

The trial court has broad discretion to determine the reasonableness of the attorney fees. To properly determine the reasonable value of an attorney's services, the trial court should consider: (1) the skill and standing of the attorney employed, (2) the nature of the case and the difficulty of the questions at issue, (3) the amount and importance of the subject matter, (4) the degree of responsibility involved in the management of the case, (5) the time and labor required, (6) the usual and customary fee in the community, and (7) the resulting benefit to the client. *Kruse*, 288 Ill. App. 3d at 436, 683 N.E.2d at 1188. Here, respondent presented evidence very similar to that presented in *Kruse*, but respondent's evidence went further and listed the cost for *each* service performed, as well as a total charge for all services rendered. The trial court should have been able to determine respondent's reasonable attorney fees based on the evidence presented and the court's knowledge of the contested issues in this case.

Even if we accept the trial court's denial of reasonable fees, there was no reason not to award respondent his costs. We do not suggest respondent's attorney presented evidence that serves as a model for establishing fees, nor do we fault the court for wanting the best evidence available. However, in the context of this case and the effort expended and results obtained by respondent's counsel, the denial of any fees was an abuse of discretion.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's maintenance award. We reverse the trial court's denial of attorney fees and remand to the trial court to determine respondent's counsel's reasonable attorney fees. We draw no conclusion as to the amount of money which constitutes counsel's reasonable fees. We defer to the trial court's discretion to determine counsel's reasonable fees using the evidence presented at trial or conducting further hearings as it deems necessary.

Affirmed in part and reversed in part; cause remanded with directions.

COOK, P.J., and STEIGMANN, J., concur.