2022 IL App (1st) 201234-U

FIFTH DIVISION
Order filed: November 3, 2022

No. 1-20-1234

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF SUZANNE M. RYAN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2011 D 2451 |
| | ) | |
| ROIBIN RYAN, | ) | Honorable |
| | ) | Robert W. Johnson, |
| Respondent-Appellee. | ) | Judge, presiding. |

_____

JUSTICE HOFFMAN delivered the judgment of the court.
Justices ___ and ___ concurred in the judgment.

**ORDER**

¶ 1 *Held*: In a proceeding for reinstatement of child support, the former wife failed to show that the trial court abused its discretion by not deviating from the child support guidelines, which required the lower-income former wife to pay support to the higher-earning but majority-custody former husband, when the former wife had minority custody of the child, the former husband paid for virtually all of the child's expenses, and the former wife had sufficient imputed income and assets to pay the

amount of support ordered. The circuit court also did not abuse its discretion in reducing the amount of the former husband's contribution to the former wife's attorney's fees to an amount closer to that charged by the former husband's attorneys.

¶ 2 In this appeal concerning a post-judgment dissolution-of-marriage proceeding, appellant Suzanne Ryan appeals two final orders rendered by the circuit court regarding child support and attorney's fees. In the first order, the court granted Suzanne's petition for modification of child support but ordered that Suzanne be the one making support payments to her former husband, Roibin Ryan. In the second order, the court granted Suzanne's petition for contribution to attorney's fees but found that the amount that Suzanne requested was unreasonable and set the contribution at a reduced amount. Suzanne assigns error to both of these rulings, asserting that the circuit court should have deviated from the child support guidelines and that the amount of the fees requested was reasonable. We disagree and affirm both orders.

¶ 3 Suzanne and Roibin's eleven-year marriage was dissolved in 2011 pursuant to a judgment that incorporated a marital settlement agreement (MSA) and a joint parenting agreement (JPA). The JPA set forth that Suzanne and Roibin would have joint custody of their two children, Lochlainn, born in 2001, and Finn, born in 2004. The MSA provided that Roibin was to pay Suzanne child support in the amount of $4000 per month and spousal support in the amount of $4500 per month for five years, plus a percentage of Roibin's annual bonus. The MSA also contained a division of the parties' assets, pursuant to which Suzanne ultimately received over $1 million in various assets, plus a percentage of Roibin's deferred compensation distributions, which began upon his retirement in 2016 and from which Suzanne receives approximately $40,000 per year.

¶ 4 Although the initial dissolution proceeding appears to have been relatively harmonious, the post-dissolution proceedings have ultimately become much more troubled and contentious. In

2015, Suzanne filed a motion to prevent Roibin from taking the children on a vacation to the parties' home in North Carolina, asserting that the children told the Department of Children and Family Services that they were afraid of their father. Roibin countered with his own motion for the court to require that Suzanne's visitation be supervised, alleging that Suzanne was fabricating allegations of abuse and attempting to damage Roibin's relationship with Lochlainn. Following a hearing on the matter, the circuit court found that "Suzanne [was] doing exactly what Roibin [was] accusing her of doing." The court observed that Suzanne had testified with evasiveness and derision and lacked credibility, and the court further found that Suzanne's conduct was having a negative impact on the children. Therefore, the court granted Roibin's motion and required that all of Suzanne's subsequent visitation and communication with the children be supervised. The court also terminated Roibin's child support obligation. A year and a half later, in September 2016, the court lifted the supervision restriction and allowed Suzanne to resume unsupervised overnight visits with the children.

¶ 5 In 2017, the parties began another round of litigation after Lochlainn tragically took his own life. In October 2017, Roibin filed a second motion for supervised parenting time seeking to limit Suzanne's visitation with Finn, alleging that, as she did with Lochlainn, Suzanne was using false allegations to turn Finn against her father. Roibin asserted that Suzanne's resumption of this conduct posed a threat to Finn's emotional well-being. The circuit court held a hearing and ultimately dismissed the motion, concluding that there was insufficient evidence that Suzanne was engaging in such conduct directly with Finn.

¶ 6 In November 2017, Roibin filed a motion to permanently modify the parenting schedule and to obtain sole decision-making responsibilities for Finn. The court held a ten-day trial on the motion from August 2018 to September 2019 and ultimately granted Roibin's requests. In doing

so, the court found that Suzanne "present[ed] a serious endangerment to [Finn's] mental and emotional health." Specifically, the court observed that Suzanne failed to properly supervise her daughter when she allowed Finn to stay out beyond curfew and exposed Finn to two family members who allegedly had a negative influence on the young girl. Accordingly, the court limited Suzanne's visitation to approximately 25% of all overnights and gave Roibin sole decision-making responsibilities over Finn. The court's order provided that after six months Suzanne could gain additional visitation by complying with particular terms. Suzanne eventually obtained such an increase to approximately 30% of all overnights one year later in December 2020.

¶ 7 In January 2018, prior to the commencement of the trial on Roibin's motion to modify visitation, Suzanne filed a motion seeking the reinstatement of child support, followed by a November 2019 petition for contribution to attorney's fees. The circuit court held a hearing on both motions over the course of five days in 2019 and 2020 before issuing separate orders on the two matters in October 2020.

¶ 8 Regarding the reinstatement of child support, the court granted Suzanne's request, but found that the child support guidelines mandated that Suzanne be the one paying support to Roibin. The court found that Roibin, an attorney who chose to retire at age 55 when released by his last employer, was voluntarily unemployed, and the court imputed to Roibin an annual income of $375,554, not including bonuses and other equity compensation. The court also noted that Roibin was paying for all of Finn's expenses, totaling approximately $51,000 per year. As for Suzanne, the court found that she had not worked full-time since prior to the parties' marriage and had only worked part-time as a home healthcare aide for two months in 2019 and for one month in 2020, earning $13 and $15 per hour for those jobs, respectively. Although Suzanne claimed that she is disabled due to mental health issues and is unable to work as a result, the court did not credit that

assertion, noting that Suzanne had not presented any evidence from a mental health expert establishing that she is disabled and unable to work. Accordingly, the court found that Suzanne was voluntarily unemployed and imputed to her a full-time minimum-wage income of $29,120 per year. The court found that based on the child support guidelines Suzanne was required to pay Roibin $186.13 per month in child support and $31.19 per month for medical expenses.

¶ 9 As for Suzanne's petition for contribution to her attorney's fees, the court granted Suzanne's request that Roibin contribute to her fees, but it found that the requested amount was unreasonable. The court found that, from April 2019, the time they joined the case mid-trial, through May 2020, Suzanne's attorneys billed $261,831, while Roibin's attorneys had billed only $158,983 during the same period. Suzanne's attorneys had been paid $134,104.80 at that point, leaving a balance of $127,726.20 remaining unpaid. However, the court found that the amount billed by Suzanne's attorneys was unreasonable and that a reasonable amount would have been no more than $170,000. Accordingly, the court ordered Roibin to contribute only $35,896 towards Suzanne's fees, the difference between the reasonable fee of $170,000 and the amount already paid. Suzanne now appeals both of the circuit court's October 2020 orders.

¶ 10 Starting first with the child support order, Suzanne argues that the difference in the parties' respective incomes and assets warranted a deviation from the guidelines and that the circuit court erred in applying the guidelines amount. Our analysis of this issue must first begin with an overview of the statutory scheme setting forth the procedure for determining a party's child support obligation.

¶ 11 Section 505(a)(1.5) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/505(a)(1.5) (West 2020)) provides that a court shall first "determine each party's monthly net income," then add those incomes together to determine the combined monthly net income, then

"select the corresponding appropriate amount from the schedule of basic child support obligations" provided by the Department of Healthcare and Family Services "based on the parties' combined monthly net income and number of children of the parties," and finally "calculate each parent's percentage share of the basic child support obligation." This "income-shares model," which the Illinois General Assembly adopted in 2017, "drastically changed the [prior] child support guidelines," with the new model now taking into account the incomes of both parents (*In re Marriage of Connelly*, 2020 IL App (3d) 180193, ¶ 16), as well as the amount of time that the child spends with each parent. See 750 ILCS 5/505(a)(3.8).

¶ 12 As an initial consideration within this analysis, Suzanne disputes the circuit's determination of her income, given her unemployment. "The Act creates an affirmative duty on a spouse requesting maintenance to seek and accept appropriate employment." *In re Marriage of Liszka*, 2016 IL App (3d) 150238, ¶ 73 (citing *In re Marriage of Schuster*, 224 Ill. App. 3d 958, 970 (1992)). "In order to impute income to a party, the court must find that the party is voluntarily unemployed, is attempting to evade a support obligation, or has unreasonably failed to take advantage of an employment opportunity." *In re M.M.*, 2015 IL App (2d) 140772, ¶ 44 (citing *In re Marriage of Gosney*, 394 Ill. App. 3d 1073, 1077 (2009)). "Imputation is appropriate in cases of voluntary unemployment or voluntary underemployment." (Emphasis omitted.) *In re Marriage of Ruvola*, 2017 IL App (2d) 160737, ¶ 39. A court's decision to impute income is reviewed for an abuse of discretion. *Id.*

¶ 13 Suzanne contends that the circuit court abused its discretion in determining that she was voluntarily unemployed and in imputing income to her as a consequence. Suzanne maintains that she has mental illnesses that render her disabled and unable to work. The court, however, found that Suzanne's allegations of mental illness were insufficient to establish that she was involuntarily

unemployed, with the court specifically noting that "[n]o mental health expert has testified that Suzanne is disabled and unable to work." Our court has previously held that a party's allegation of disability does not by itself establish an inability to work in the absence of medical evidence supporting the allegation. See *In re Marriage of Ebert*, 81 Ill. App. 3d 44, 46–47 (1980) (holding that the trial court did not abuse its discretion in determining that a party's unemployment was voluntary when the party had failed to provide medical evidence of their alleged disability); see also *In re Marriage of Parker & Reichert*, 2021 IL App (5th) 190440-U, ¶ 65 (unpublished order under Supreme Court Rule 23) (same). Accordingly, because Suzanne failed to submit medical evidence establishing an inability to work, the circuit court did not abuse its discretion when it found Suzanne's unemployment voluntary and imputed income to her.

¶ 14 Suzanne also argues that, if income is to be imputed to her, the circuit court miscalculated the amount based on the procedure set forth in section 505(a)(3.2) of the Act. Subsection (3.2) provides that, if a parent is deemed to be voluntarily unemployed, the amount of child support should be determined based on her potential income, which is determined by her "employment potential and probable earnings level based on [her] work history, occupational qualifications, prevailing job opportunities, the ownership by a parent of a substantial non-income producing asset, and earnings levels in the community." "If there is insufficient work history to determine employment potential and probable earnings level, there shall be a rebuttable presumption that the parent's potential income is 75% of the most recent United States Department of Health and Human Services Federal Poverty Guidelines for a family of one person." *Id.*

¶ 15 Suzanne contends that her work history is insufficient to establish a potential and probable earnings level and that her income should, therefore, be 75% of the poverty level, which she alleges would have been $9570 for 2020. However, she does not cite any caselaw supporting her assertion

that a work history like hers is insufficient, and we are inclined to agree with the circuit court that Suzanne having performed the same type of job on two separate occasions at similar rates of pay within a recent two-year period was sufficient to establish a potential and probable level of income. At the very least, we do not believe that the circuit court's finding on this issue is against the manifest weight of the evidence. See *In re Marriage of Gabriel & Shamoun*, 2020 IL App (1st) 182710, ¶ 39 ("We defer to a trial court's 'factual finding[s] as to the parties' annual incomes' as long as the findings are not against the manifest weight of the evidence." (quoting *In re Marriage of Walker*, 386 Ill. App. 3d 1034, 1041 (2008))).

¶ 16 Seeing no error in the circuit court's determination of the parties' incomes, we move then to the court's decision to not deviate from the guidelines. Section 505(a)(3.4) of the Act provides that the guidelines act as a rebuttable presumption of the correct amount of child support, but that a court may deviate from those guidelines "if the application [of the guidelines] would be inequitable, unjust, or inappropriate." The Act lists as possible bases for deviation "extraordinary medical expenditures necessary to preserve the life or health of a party or a child of either or both of the parties," "additional expenses incurred for a child subject to the child support order who has special medical, physical, or developmental needs," and "any other factor the court determines should be applied upon a finding that the application of the child support guidelines would be inappropriate, after considering the best interest of the child." *Id.* Those "other factor[s]" include the "financial resources and needs of the child," "the financial resources and needs of the parents," "the standard of living the child would have enjoyed had the marriage or civil union not been dissolved," and "the physical and emotional condition of the child and his or her educational needs." *Id.* § 505(a)(2).

¶ 17 Suzanne contends that each of these "other factors" supports a deviation from the guidelines. However, we disagree, as none of these factors presents such a compelling case for deviation as to render the court's refusal to deviate an abuse of discretion. First, regarding the "financial resources and needs of the child," there does not appear to have been any evidence of Finn's personal financial resources, and her financial needs appear to amount to a total of $51,000 per year, the bulk of which is attributable to $20,000 per year for private school and $18,000 per year for therapy. While those are considerable financial needs, those expenses are in fact borne entirely by Roibin, not Suzanne. If anything, this factor supports the idea that Suzanne should be contributing to Roibin, rather than the other way around.

¶ 18 Second, consideration of the "the financial resources and needs of the parents" likewise does not suggest that a deviation from the guidelines was necessary. Both parties have substantial financial resources, with the circuit court finding that Roibin has a net worth of $6.1 million and Suzanne has a net worth of $651,000. Although Suzanne claims to be unemployed and destitute, we have already established that her unemployment can be considered voluntary, and she has considerable assets to draw upon, not to mention an additional $40,000 per year that she receives from Roibin's deferred compensation, a stream of money that the circuit court did not include in either party's income, but perhaps should have. See *In re Marriage of Verhines & Hickey*, 2018 IL App (2d) 171034, ¶ 57 (citing *Posey v. Tate*, 275 Ill. App. 3d 822, 826 (1995)) ("Deferred compensation is income for the purposes of determining child support."). When considering the entire financial picture, including both parties' considerable assets and the relatively modest amount of support that the court ordered Suzanne to pay, which will amount to approximately $6600 in total by the time Finn reaches the age of majority, we disagree with Suzanne's assertion that the parties' financial resources and needs compel a departure from the child support guidelines.

¶ 19 The third factor is "the standard of living the child would have enjoyed had the marriage or civil union not been dissolved." Suzanne's argument on this factor largely amounts to unsourced speculation about the differences in Finn's current lifestyle when living with each of her parents, with Suzanne pointing to Roibin's wealth as evidence that he has the ability to give Finn a more luxurious life than Suzanne can afford to do. But a comparison of the two parents' *current* living situations is not the correct analysis. Rather, the consideration is the standard of living that the child "would have enjoyed had the marriage or civil union not been dissolved." On that issue, Suzanne does not cite any evidence demonstrating how Finn's standard of living would have been any different had the parties remained married. She instead focuses on comparing the parties' current lifestyles, without any discussion of what Finn's lifestyle was like during the marriage and how her current situation differs. But even if we were to look only at the parties' current lifestyle differences, Suzanne cites scant evidence of a significant difference and instead relies largely on unsubstantiated assertions regarding the life that Roibin *can afford* to provide to Finn, rather than what he is *actually providing*. This factor likewise does not compel a deviation from the guidelines.

¶ 20 Last, we consider "the physical and emotional condition of the child and his or her educational needs." As we noted earlier, Finn attends therapy and private school. However, Roibin bears the cost of both of those services entirely on his own. As discussed in regards to the first factor, Roibin's sole shouldering of the responsibility for these expenses hardly supports Suzanne's claim that she should be the one receiving support.

¶ 21 In addition to those factors listed in the statute, Suzanne also asserts that we should consider the parties' parenting schedule. Specifically, she alleges that she currently has a significant, albeit minority, percentage of the overnights over the course of the year and, therefore, has "incurred (and continues to incur) expenses to exercise her parenting time," warranting

support from Roibin. However, as part of its calculus the child support guidelines expressly consider the number of overnights that each parent receives (see 750 ILCS 5/505(a)(3.8); *Shared Physical Care Support Obligation Worksheet*, Illinois Department of Healthcare and Family Services, https://www2.illinois.gov/hfs/SiteCollectionDocuments/StandaloneSharedPhysicalCareSupportObligationWorksheet.pdf (last visited October 21, 2022)), and the parent with a minority share of the overnights owing support to the parent with the majority of the overnights hardly creates the impression that application of the guidelines would be an injustice.

¶ 22 In sum, after considering the factors set forth above, we disagree with Suzanne that application of the guidelines in this case would be "inequitable, unjust, or inappropriate." 750 ILCS 5/505(a)(3.4). Roibin has a majority of the overnights and is paying for virtually all of Finn's expenses, and Suzanne's finances are sufficient to cover the relatively modest amount of support ordered. Accordingly, the circuit court did not abuse its discretion in declining to deviate from the guidelines in this case.

¶ 23 The second issue presented in this appeal is the circuit court's decision to limit the amount that Roibin is required to contribute towards Suzanne's attorney's fees. The court found that the amount of fees requested was unreasonable and that an appropriate fee would be one more in line with that charged by Roibin's attorneys. We see no abuse of discretion on this matter either.

¶ 24 It has been well-established that "[a]n appropriate attorney fee consists of reasonable charges for reasonable services." *In re Marriage of Patel & Sines-Patel*, 2013 IL App (1st) 112571, ¶ 103 (citing *In re Marriage of Shinn,* 313 Ill. App. 3d 317, 323 (2000)). To determine whether the fees requested are reasonable, a court should consider the number of hours that the parties' attorneys spent on the case, as well as: "(1) skill and standing of the attorneys; (2) the difficulty of the issues;

(3) the amount and importance of the subject matter in the field of family law; (4) the degree of responsibility involved in the management of the case; (5) the usual and customary charge in the community; and (6) the benefits to the client." *Id.* (citing *In re Marriage of Malec*, 205 Ill. App. 3d 273, 285 (1990)). "The most important of the factors is the amount of time spent on the case, but the time charged for must be necessary to handle the matter involved." *Id.* (citing *Malec*, 205 Ill. App. 3d at 285). "The allowance of attorney fees and the amount awarded are matters within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion." *In re Marriage of DeLarco*, 313 Ill. App. 3d 107, 111 (2000) (citing *In re Marriage of Waltrip,* 216 Ill. App. 3d 776, 781 (1991)).

¶ 25 The circuit court's order in this case was thorough. In it, the court noted that the trial on Roibin's motion for modification of the parenting schedule was well underway and nearing completion when Suzanne changed attorneys. The court further recounted that Suzanne had litigated in bad faith and that Suzanne's own actions in failing to properly supervise her minor daughter had resulted in additional litigation that further drove up the amount of the fees charged, which is a factor that the court was entitled to consider. See *In re Marriage of Patel*, 2013 IL App (1st) 112571, ¶ 109. Additionally, the court recited the amount of the fees charged by each side's attorneys for work performed on the same matters during the same period of time and found that Suzanne's attorneys had billed considerably more. Specifically, the court found that, from April 2019 through May 2020, Suzanne's attorneys billed $261,831, while Roibin's attorneys billed only $158,983. The court found this discrepancy unreasonable and instead concluded that a reasonable and necessary fee for the period at issue should not have exceeded $170,000. Suzanne argues on appeal that the difference between the amount charged by the two sides is attributable to the time needed for her new attorneys to familiarize themselves with the case after joining mid-way through

the trial, but we cannot agree that their familiarization period justifies a fee that is roughly 60% higher than that charged by their counterparts. We see no abuse of discretion in the court's determination as to the appropriate fee amount in this case.

¶ 26 In sum, we affirm both the order granting Suzanne's motion to reinstate child support and ordering her to make child support payments to Roibin and the order that Roibin contribute $35,896 towards Suzanne's attorney fees.

¶ 27  Affirmed.